## HENRY D. LAUGHLIN v. EDWARD B. LEIGH, Appellant.

### Division Two, March 15, 1910.

1. **AMENDED ANSWER: Departure.** The court does not commit error in refusing to permit defendant to file an amended answer on the eve of the trial, which is a departure or substantial change from the position he had previously assumed. Where the suit was for an accounting for bonds belonging to plaintiff received by defendant from the trustee, and defendant pleaded that, in a suit in Illinois for certain stocks, judgment had been rendered for defendant, that the issues and facts involved in that suit were the same as those involved in this, and that such judgment was *res adjudicata*, defendant should not, after an appeal and a reversal of the judgment in that case by the Supreme Court of Illinois, be permitted, after the evidence was taken, to file an amended answer in which he abandons his defense of *res adjudicata*, and pleads a splitting up by plaintiff of his cause of action.

2. **SPLITTING CAUSE OF ACTION: Jurisdiction.** Plaintiff claimed that certain bonds and stocks turned over to defendant by the trustee were his, and turned over to defendant as his attorney in fact, and he brought suit in Illinois for the stocks and in Missouri for the bonds, the facts, it is claimed

by defendant, being such that if plaintiff is entitled to the stocks he is also entitled to the bonds. The Missouri suit on the bonds was brought first, and the Illinois suit was prosecuted to a final judgment without any plea that a prior suit was pending in Missouri involving the same cause of action. *Held*, that defendant's plea in the Missouri case that plaintiff had split his cause of action will not avail. Especially should this be the ruling when the facts show that the only contract which goes to establish the unity of the causes of action, did not exist.

3. **CONTRACT: Between Principal and Agent: Necessary Proof.** Where the written evidence shows that plaintiff was to receive certain bonds and stock of a company, and appointed defendant to act for him in receiving them, and defendant did, evidence to show that he was to have one-half the bonds as his own must be clear and cogent, fully satisfying the conscience and judgment of the chancellor. And the evidence in this case fails to show such an agreement.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge.

AFFIRMED.

*Judson & Green* and *Johnson, Rule & Allen* for appellant.

(1) This case was essentially one of equitable cognizance, being a petition for discovery and accounting of certain bonds alleged to have been received by defendant in trust for plaintiff which plaintiff claimed the right to retain by reason of participation under agreement with plaintiff in the ventures wherein said bonds were received by defendant. In such an equitable cause the whole matter is open to review and revision in this court both as to the law and fact. 1 Pomeroy on Eq. Jur., secs. 2223-30; 3 Ib., secs. 1420-21; 1 Ency. Pl. and Pr., pp. 94-96; King v. Moon, 42 Mo. 553; Widdicombe v. Childers, 84 Mo. 382; Biddle v. Ramsey, 52 Mo. 153; Felton v. Greary, 104 Mo. 488; Likins v. Likins, 122 Mo. 279; Lins v. Lenhart, 127 Mo. 271; Blount v. Spratt, 113 Mo. 48; McElvoy v. Maxwell,

101 Mo. 294; Benne v. Schnecko, 100 Mo. 250; Swon v. Stevens, 143 Mo. 392. (2) As the case was one of equitable cognizance and heard by the court as such, it follows that the issue must be determined in this case *de novo*. The deference to be paid to the findings of the court below, which is allowed in causes where the witnesses are heard orally by the court, is inapplicable here; as the testimony was heard by a referee who died before rendering his report, so that the case was submitted to the trial judge upon the transcript of the testimony as taken before the referee. Lins v. Lenhart, 127 Mo. 271; Bank v. Newkirk, 144 Mo. 473; Robertson v. Shepard, 165 Mo. 360; Dalwrymple v. Craig, 149 Mo. 351; Allen v. Logan, 96 Mo. 598. (3) The agreement set out in the answer, as also in the amended answer, that defendant by the agreement with plaintiff made prior to the adjustment deal was to share equally with plaintiff in the profits thereof in consideration of his services therein, in his waiver of his right to redeem his stock thereunder, was clearly established by the evidence in the case. This agreement and this action thereunder were confirmed by plaintiff in the settlement made between the parties in April, 1900. This agreement was incidental and collateral to the agreement between the equipment company and the beam company, and in no wise infringed upon the rule concerning contradicting, changing or varying a written contract by parol evidence. The trust created by such agreement can always be proved by parol. 2 Wharton on Ev., secs. 903, 1031, 8, 42; Adams, Eq., p. 35; Paugh v. Davis, 96 U. S. 332; 2 Pomeroy. Eq., 1055. (4) The refusal of the lower court to allow the defendant to file an amended answer, so as to conform to the evidence taken before the referee was an abuse of the discretion of the court, and was duly excepted to in the motion for new trial. The filing of this answer could not have been in any wise prejudicial to the

plaintiff and it merely conformed to the evidence introduced by both parties and to the facts which had transpired in litigation instituted by the plaintiff in another jurisdiction. The allowance of such an amendment in furtherance of justice is always favored in courts of equity. See 1 Ency. Pl. and Pr., 495-498; Chase v. Jennings, 159 Mo. 553; Pratt v. Matthew, 42 Mo. App. 495; Irwin v. Childs, 28 Mo. 578; Carr v. Moss, 87 Mo. 449. (5) There is no warrant for the imputation that the agreement between plaintiff and defendant was on the latter's part in fraud of the rights of the stockholders of either company. A contract made by an officer of a company whereby he is to make a personal profit for services rendered the company is not void but only voidable at the instance of the company. In this case there was no concealment. The position of defendant was avowed and known to his associates, so that there is no basis for the imputation whatever. Barr v. Railroad, 125 N. Y. 263; Jesup v. Railroad, 43 Fed. 483; Ready v. Smith, 170 Mo. 163; Foster v. Mullanphy Co., 16 Mo. App. 150. (6) If it should be held that the agreement between plaintiff and defendant, that defendant should share the profits of the rent readjustment deal, was, because of defendant's relations to the company and to the equipment company, contrary to public policy and, therefore, voidable, and that nevertheless the bonds in controversy were, with plaintiff's knowledge of all the facts relative to the transaction and with plaintiff's consent, retained by defendant as part of the latter's share in said profits; then plaintiff was a party to the fraud, and is not entitled to recover from defendant the said bonds. Under such circumstances, the court will leave the parties where their illegal act left them. Jackson v. Executors, 100 Mo. 130; Adams Express Co. v. Reno, 48 Mo. 267; Davis v. Luster, 64 Mo. 46; Scudder v. Bailey, 66 Mo. App. 46; Turley v. Edwards, 18 Mo. App. 682; Continental Co. v. Voight, advanced sheets

U. S. Sup. Ct. Rep. No. 7, Oct. Term, 1908, 292. (7) Whether the judgment in the Chicago case is res adjudicata of this case or not, the plaintiff, by instituting the two separate suits in the separate jurisdictions—one for the brake beam company shares, and the other for the equipment company bonds—and in prosecuting the case brought in Chicago to final judgment, split up his cause of action and thereby estopped himself from recovery in this case. Donnell v. Wright, 147 Mo. 646; Spratt v. Early, 199 Mo. 500; Womach v. St. Joseph, 201 Mo. 476; Bircher v. Boemler, 204 Mo. 562; Railroad v. Levy, 17 Mo. App. 507.

*Randolph Laughlin* and *Lee Mudd* for respondent.

(1) The pretended contract between plaintiff and defendant, set up in defendant's answer, is no longer an open question, but has passed into rem judicam against the defendant, and the defendant is estopped by final decree in the Chicago case to assert to the contrary of any fact actually determined or which might have been determined in the Chicago litigation. Railroad v. United States, 168 U. S. 48; Cromwell v. County of Sac, 94 U. S. 351; Mason v. Summers, 24 Mo. App. 174; Case v. Gorton, 33 Mo. App. 174; State ex rel. v. Branch, 134 Mo. 592; Young v. Byrd, 124 Mo. 590; Edgell v. Sigerson, 26 Mo. 583; Dickey v. Heim, 48 Mo. App. 118. (2) Whether or not there was such an agreement between plaintiff and defendant as is pleaded in defendant's answer in this case, was, as appears from the opinion of the Illinois Appellate Court, and as was stated by Leigh's counsel in that case, "substantially the sole controversy" to be there determined, and the Illinois court determined it. Laughlin v. Leigh, 112 Ill. App. 119, 211 Ill. 192. (3) The fact that the findings and decrees of the Illinois courts have been received in evidence in this case without being pleaded, does not at all affect their operation as estoppels. They

are as conclusive against appellant as if they had been anticipated and pleaded in the beginning. Railroad v. United States, 168 U. S. 55; Garton v. Botts, 73 Mo. 274; 1 Freeman on Judgments (4 Ed.), sec. 284. (4) Independent of the doctrine of estoppel by judgment, and considering the question on its merits, the pretended contract or agreement on which appellant relies, was not only unproved, but disproved. Laughlin v. Leigh, 112 Ill. App. 119, 211 Ill. 192; Brake Beam Co. v. Leigh, 224 Ill. 132. (5) The defense of splitting the cause of action can avail the appellant nothing, for the following reasons: (a) Because the demands made by the plaintiff in this and in the Chicago case respectively are separate and distinct, and result from separate and distinct transactions. The only pretense of unity between them was, and is, bottomed on the appellant's pretended contract, claimed by him to include both, and the decisions of the Illinois courts not only estop him from pleading unity through any such contract, but they are also conclusive of the fact that the transactions are distinct and separate. Flaherty v. Taylor, 35 Mo. 451; Transportation Co. v. Traube, 59 Mo. 362; Hoffman v. Hoffman, 126 Mo. 497; Brown v. King, 10 Mo. 42; Boyce v. Christy, 46 Mo. 72; Jacobs v. Lewis, 47 Mo. 344; West v. Moser, 49 Mo. App. 201; Grocer Co. v. Taggart, 60 Mo. App. 389. (b) Because this suit for the bonds was brought and was pending before the institution of the Chicago suit for the stock, and the jurisdiction of this court was insufficient to afford the respondent the relief which he sought in the Chicago court. State ex rel. v. Daugherty, 45 Mo. 97; Wanborg v. Karst, 4 Mo. App. 563; Mitchell Co. v. Payton, 4 Mo. App. 564; Smith v. Warden, 86 Mo. 382; Carroll v. Campbell, 110 Mo. 557; Johnson v. Johnson, 72 Mo. App. 386; Linville v. Rhoades, 73 Mo. App. 217; Thompson v. Holden, 117 Mo. 130; Warder v. Henry, 117 Mo. 541; Drey v. Doyle, 28 Mo. App. 249. The situs of stock

is the home office of the corporation issuing it, and the Missouri court had no jurisdiction whatever over the Illinois stock involved in the Illinois suit. Armour v. Bank, 113 Mo. 20; 2 Cook on Corp. (4 Ed.), sec. 485; Christmas v. Biddle, 13 Pa. St. 223. (c) Because the suit which is claimed to have split the demand made in this suit was brought in another State. Now, the ground on which courts proceed to bar or to abate one action because of another one pending for the same or a part of the same cause, is found in the maxim "Nemo debet bis vexari pro una et eadem causa." Moran v. Plankington, 64 Mo. 338; State v. Daugherty, 45 Mo. 294; Cady v. Kyle, 47 Mo. 346; Bank v. Tracey, 141 Mo. 258; Donnell v. Wright, 147 Mo. 646; Skeen v. Thresher Co., 42 Mo. App. 164; Robbins v. Conley, 47 Mo. App. 506; West v. Moser, 49 Mo. App. 211; Buffum v. Tilton, 17 Pick. 511. But the maxim "Nemo debet bis vexari pro una et eadem causa" only applies where both suits are within the same sovereign jurisdiction. Lorillard v. Meshural, 7 Rob. 308; Davis v. Morton, 4 Bush (67 Ky.) 443; Salmon v. Wootton, 9 Dana 423; Yelverton v. Conant, 18 N. H. 124; Crossman v. Rubber Co., 16 N. Y. Sup. 609. Hence it has been uniformly held that a cause of action pending in one State cannot be abated or barred because of another action pending in another State, either for the same or a part of the same cause of action. Humphreys v. Dawson, 38 Ala. 204; Grider v. Apperson & Co., 32 Ark. 335; Moore v. Emerick, 38 Ark. 203; Hatch v. Spofford, 22 Conn. 496; Howard v. Railroad, 2 Harrington, 471; Railroad v. Jackson, 86 Ga. 685; McJilton v. Love, 13 Ill. 494; Allen v. Watt, 69 Ill. 658; Bradley v. Bank, 20 Ind. 532; Railroad v. Hunt, 20 Ind. 467; DeArmond v. Bohn, 12 Ind. 608; Davis v. Morton, 4 Bush (67 Ky.) 443; Salmon v. Wootton, 9 Dana 423; Stone v. Vincent, 6 Martin (N. S.) 517; West v. McConnell, 5 La. 425; Peyroux v. Davis, 17 La. 480; Seevers v. Clement, 28 Md. 435; Sandwich Mfg. Co. v. Earl, 56 Minn. 396;

Yelverton v. Conant, 18 N. H. 124; Goodall v. Marshall, 11 N. H. 99; Kerr v. Willetts, 48 N. J. L. 79; Vail v. Railroad, 4 Atl. 664; Bowne v. Joy, 9 Johns. 221; Walsh v. Durkin, 12 Johns. 100; Burrows v. Miller, 5 How. Pr. 52 (Affirms the common-law rule, and holds that the code has not affected it); Cook v. Littlefield, 5 Sandf. 342; Hecker v. Mitchell, 6 Duer 687; Williams v. Ayrault, 31 Barb. 367; Insurance Co. v. Meshural, 7 Rob. 314; Hadden v. Railroad, 57 How. Pr. 390; Bank v. Bonney, 101 N. Y. 175; Crossman v. Rubber Co., 16 N. Y. Sup. 609; Douglas v. Insurance Co., 138 N. Y. 218; Smith v. Crocker, 14 N. Y. App. Div. 249; Sloan v. McDowell, 75 N. C. 333; Smith v. Lathrop, 44 Pa. St. 331; O'Reilly v. Railroad, 16 R. I. 396; Astly Co. v. Goldman, 21 R. I. 280; Hill v. Hill, 51 S. C. 136; Lockwood v. Nye, 2 Swan. (32 Tenn.) 520; Drake v. Brander, 8 Tex. 357; Railroad v. Charman, 24 S. W. 958; White v. Whitman, 1 Curtis U. S. C. C. Rep. 495; Lyman v. Brown, 2 Curtis 559; Loring v. Marsh, 2 Clifford 322; Stanton v. Embrey, 93 U. S. 554; Gordon v. Gilfoil, 99 U. S. 178; Marshall v. Otto, 59 Fed. 252; Davis v. Morriss, 76 Va. 27; Wood v. Lake, 13 Wis. 91; 1 Am. Dig., pp. 89, 90, sec. 92; 8 Am. and Eng. Ency. Law, p. 554; Bennett on Lis Pen., sec. 348, pp. 391, 393; Black on Judg., sec. 865; 1 Barb. Ch. Pr., p. 125; 1 Cyc. Law and Proc., pp. 36, 37; 1 Ency. Pl. and Pr., p. 764; Story on Conflict of Laws (8 Ed.), p. 833, note; Story, Eq. Pl. (10 Ed.), sec. 741, p. 614, and note; Wharton on Conflict of Laws, sec. 784. (d) Because it is priority of institution, and not priority of determination, which constitutes a splitting of demands. When a suit is once brought and is pending, either for the whole or a part of one demand, it cannot thereafter be defeated by the institution of a subsequent suit, or by prosecuting such subsequent suit to prior judgment. If the suit first instituted is for the whole of the demand, it is not abated by the second suit, and if it is only for a part of the demand, the second suit is not available as a defense

in bar, on the theory of splitting the cause of action. Van Fleet's Former Adjudication, p. 218, sec. 336; Humphreys v. Dawson, 38 Ala. 204; Lizer v. Gillpatrick, 69 Kas. 567; Sherwood v. Hammond, 4 Blackf. 504; Eiceman v. State ex rel., 75 Ind. 46; Bank v. Bank, 7 Gill 428; Webster v. Randall, 19 Pick. 20; Wales v. Jones, 1 Mich. 245; Calliman v. Railroad, 61 Mich. 15; Haight v. Holly, 3 Wend. 611; Nicholl v. Mason, 21 Wend. 341; King v. Phillips, 8 Bos. 611; Republic of Mexico v. Arrengois, 1 Abb. Pr. 427; Welch v. Sage, 47 N. Y. 150; Middlebrook v. Travis, 68 Hun 156; Ratzer v. Eatzen, 2 Abb. New Cases, 461; Schmidt v. Lathrop, 84 Am. Dec. 454, note; Renner v. Marshall, 14 U. S. 216; Wallace v. McConnell, 38 U. S. 151; Morton v. Webb, 7 Vt. 124; Ballou v. Ballou, 26 Vt. 675; Wood v. Lake, 13 Wis. 91.

GANTT, P. J.—This is an appeal from the judgment of the circuit court of the city of St. Louis on the 10th day of April, 1906.

The suit was one in equity and there were two counts in the amended petition on which the cause was tried. The first count was for an accounting and judgment for certain mortgaged bonds of the National Hollow Brake Beam Company and other securities alleged to have been received by the defendant in trust for the plaintiff. There was a final judgment for the defendant on the issues joined on that count and the plaintiff has not appealed therefrom, so that count is not involved in this appeal. In the second count plaintiff avers that the defendant during January, 1899, received from the American Trust and Savings Bank of Chicago, Illinois, as plaintiff's agent and for plaintiff's account, two hundred and seventy-two mortgaged bonds, with certain interest coupons attached, of the Chicago Railway Equipment Company, each of the par value of five hundred dollars; and known and numbered as follows:

| No. received. | Series. | Numbers. |
|---|---|---|
| 2 | B | 29 and 30 |
| 10 | D | 21 to 30 both inclusive. |
| 10 | F | 21 to 30 both inclusive. |
| 30 | G | 1 to 30 both inclusive. |
| 20 | H | 11 to 30 both inclusive. |
| 100 | K | 1 to 100 both inclusive. |
| 100 | M | 1 to 100 both inclusive. |

And also received from the said bank two hundred and seventy-two interest coupons, which had previously been detached from said bonds, and had collected them and their interest, said coupons amounting in the aggregate to $13,600, and that defendant had accounted to the plaintiff for sixty-seven of said bonds of the aggregate par value of $33,500, and no more, and that defendant was wrongfully withholding the residue of said bonds and refused to account to plaintiff for any part of the same. The petition concluded with this prayer: "Plaintiff prays the court to ascertain the number of said bonds still in defendant's possession, but belonging to plaintiff, the identity of all such bonds, the amount of interest collected on account of them and the amount collected by him on those for which he did account and to render its judgment in favor of plaintiff and against defendant requiring him to account for and turn over to plaintiff all of plaintiff's bonds still in his possession with the coupons attached thereto, or to pay plaintiff the amount of the value thereof, together with the amount of interest collected or received by him on each or all of them, with interest on such collections from the dates of their respective payments, and for costs."

The answer pleads with great detail that plaintiff derived his title to said bonds through a written contract from himself and the Chicago Railway Equipment Company; that thereafter the plaintiff entered into another contract with the National Hollow Brake

Beam Company; that the two contracts together were known as the ''Rent Readjustment Matter.'' ''That before said agreement between plaintiff and said two companies were entered into, it was agreed by and between plaintiff and this defendant that the said agreements were to be taken or made in plaintiff's name alone, but that the plaintiff and this defendant should together carry out said plan and agreements, and on ·joint account, and jointly bear the burden thereof and share the benefits and profits arising therefrom, and that after their said individual indebtedness to and holdings of shares of stock in said National Hollow Brake Beam Company had been equalized, they should be the joint owners of all the shares of stock and the assets of said company, share and share alike, as well as the joint owners of the said mortgage bonds of the Chicago Railway Equipment Company which were not disposed of or used in purchasing or acquiring the outstanding shares of stock in the said National Hollow Brake Beam Company, at par, in the manner in said agreement specified.''

The answer further pleads that the defendant attended to and carried out the details of said agreement; that stock of the National Hollow Brake Beam Company to the amount of 26,223 shares was purchased in part by means of said bonds, which left 362 of said bonds undisposed of; that said 26,223 shares of stock and said 362 bonds under the terms of the said agreements so made by plaintiff with the said Chicago Railway Equipment Company and the said National Hollow Brake Beam Company, and said agreement between plaintiff and this defendant, became and were the joint property of plaintiff and this defendant; that thereafter defendant received the bonds, and accounted for and delivered to plaintiff 150 thereof, and with plaintiff's full knowledge retained 150 of said 362 bonds as and for his share thereof; that thereafter the bank (in whose possession they were) delivered

ten of said bonds to plaintiff and ten to defendant, and that plaintiff replevied ten more from said bank; that the remaining thirty-two of said bonds were sold, and that defendant accounted to plaintiff for one-half the proceeds thereof.

The answer further pleads that the defendant and plaintiff divided the stock of the N. H. B. B. Co. acquired by them as aforesaid; that thereafter the plaintiff sued the defendant for defendant's half of said stock; that defendant appeared and made defense, putting in issue the title to said stock; that the issues and facts involved in said suit are, or were, the same as the issues and facts involved in the cause of action stated and relied upon by plaintiff in the second count of his petition herein; that the cause was tried, and final judgment entered in favor of defendant, adjudging him to be the owner of said stock; wherefore defendant pleads said judgment in bar of plaintiff's right of action under the second count.

The answer finally pleads that the plaintiff's claim to the stock and bonds was a single right of action, and that by bringing two suits the plaintiff has split up said single cause of action, and is therefore estopped from maintaining his present action.

The answer concludes with a counterclaim against the plaintiff for $2000 on account of bonds alleged to have been sold by the defendant to the plaintiff.

The reply admits the source of plaintiff's title to the bonds substantially as alleged in the answer; denies the alleged private agreement or contract between plaintiff and defendant; denies that any bonds were ever retained by defendant as and for his share thereof; alleges that one hundred and fifty of them were retained by him under an option, which was terminated without being exercised; admits the suit about the stock; denies that the judgment is a final judgment; alleges that the cause is awaiting final action in the appellate courts of Illinois; denied that the defendant

has accounted to plaintiff for any of the bonds charged in the petition; denies that the cause of action has been split; and denies the counterclaim.

On June 9, 1902, this cause was referred to Edward Cunningham, Jr., Esq., to try and report his findings on all the issues, and he in due course of time proceeded to take testimony in the cause, but died before making his report. After his death, which was suggested to the circuit court on November 24, 1904, the cause was on April 18, 1905, by the stipulation of the parties, submitted to the circuit court over which Honorable Warwick Hough at that time presided, for his decision and judgment on the evidence taken before the referee.

The evidence in substance on the part of the plaintiff was to the effect that in November, 1892, the National Hollow Brake Beam Company leased its plant and equipment to the Chicago Railway Equipment Company for a period of fifteen years from 1893 to 1907, inclusive, at an anual rent of $65,000 per year. On March 16, 1898, when the lease had ten years yet to run, and when payment aggregating $600,000 remained yet to be made, the plaintiff, Laughlin, submitted a written proposition to the Equipment Company by which he offered to undertake to procure for said company a reduction of the rent reserved in the first clause of its lease from the National Hollow Brake Beam Company, to $5000 per annum, and until he had secured such reduction he would pay the Hollow Brake Beam Company for the Equipment Company the rent over and above said $5000 per annum accruing or to accrue under said first clause of the lease until the end of the term, in consideration that the Equipment Company should pay him, Laughlin, $100,000 in cash and $300,000 in bonds. The Equipment Company accepted this proposition by formal vote of the shareholders on May 18, 1898. On October 1, 1898, the plaintiff requested the American Trust and Savings Bank of Chi-

Laughlin v. Leigh.

cago to execute the trust and do for him whatever was necessary to carry into effect the contract between him and the Chicago Railway Equipment Company entered into on the 18th of May, 1898, as well as the contract between him and the National Hollow Brake Beam Company of date September 10, 1898. On the 5th of October, the Trust Savings Bank accepted this trust in a letter signed by Mr. Kopf, a trust officer. On December 3, 1898, the plaintiff wrote the following letter to the Trust Savings Bank:

Gentlemen:—Mr. E. B. Leigh is fully authorized to do any and everything involving any matter relating to the trust now being executed by you for me or relating to any other matter, business or thing whatsoever in which you may be concerned or interested to the same extent and in the same way that I could myself do it if personally present. Whatever he does is authorized by me and it will be ratified regardless of what it may be. I give this because I understand your Mr. Kopf has intimated to him that some written evidence of his authority to represent me is for some reason desirable.

Yours truly,
HENRY D. LAUGHLIN.

In pursuance of these agreements the Hollow Brake Beam Company certified to the Equipment Company that pursuant to the contract between it and the plaintiff it had reduced the rent to $5000 per annum, and thereupon on January 18, 1899, the Chicago Railway Equipment Company passed the following resolution: "That all moneys, bonds, shares of stock and other things affected by said trust and in which the company is interested through it be forthwith by said bank accounted for and turned over to said Laughlin as his sole and absolute property divested of the trust and of all restrictions and the Board of Directors are authorized to carry this resolution into effect."

Plaintiff offered and read in evidence a receipt by defendant for all the bonds mentioned and described in the second count in his petition:

Chicago, Ill., January 28, 1899.

Received from the American Trust and Savings Bank, Trustee, the following bonds of the denomination of $500 each of the Chicago Railway Equipment Company, amounting in the aggregate to $136,000, dated July 1, 1897, and having the first three coupons detached:

| No. of Bonds | Series | Number |
|---|---|---|
| 2 | B | 29 and 30. |
| 10 | D | 21 to 30 both inc. |
| 10 | F | 21 to 30 both inc. |
| 30 | G | 1 to 30 both inc. |
| 20 | H | 11 to 30 both inc. |
| 100 | K | 1 to 100 both inc. |
| •100 | M | 1 to 100 both inc. |

272 Total bonds, 272.

Also coupons (detached) No. 3, belonging to above bonds, 272 in number, of $12.50 each.

Also Certificates of Stock of the National Hollow Brake Beam Company, as follows:

No. 1229,  300 shares.
No. 1224, 9633 shares.
No. 1207, 6815 shares.
No. 1214, 5260 shares.
No. 1215, 2790 shares.
All in the name of Henry Laughlin.

HENRY D. LAUGHLIN,
By E. B. LEIGH.

On July 12, 1900, the plaintiff demanded the bonds in suit of the defendant in a letter of that date and on the 17th of July, 1900, Leigh replied in writing refusing to give up said bonds.

On the part of the defendant the evidence was, first, a certified copy of the record in the case of Laughlin v. Leigh in the circuit court of Cook county, Illinois. Defendant stated that this record was offered under a plea of *res adjudicata* and splitting the cause of action, wherein the plaintiff brought suit against the defendant for 13,111 shares of stock of the National Hollow Brake Beam Company, and sought an injunction against the defendant to restrain and enjoin him from voting such stock at any meeting of the stockholders of

said company, and restrain and enjoin him from selling, pledging or disposing of the same. It appears from the record that the plaintiff brought suit for 13,-111 shares and obtained a temporary injunction wherein there was a decree in favor of the defendant for the said number of shares of stock and dismissing the plaintiff's bill for want of equity. From this judgment the plaintiff prosecuted an appeal to the Illinois Court of Appeals, and that court reversed the judgment of the circuit court and remanded the case with instructions. Thereupon the defendant in turn appealed from the judgment of the Court of Appeals to the Supreme Court of Illinois, and the latter court on the 23d of June, 1904, affirmed the judgment of the Illinois Court of Appeals, and thereafter and before the judgment rendered in this cause, the circuit court of Cook county, in obedience to the mandate of the Supreme Court of Illinois, rendered its final judgment in that case in favor of the plaintiff and against the defendant. Defendant in his answer to the plaintiff's petition in this case, pleaded the finding and judgment in the circuit court of Cook county adjudging and decreeing the said shares of stock to be the property of defendant, and that the said judgment was final and unreversed, and added 'that the issues and facts involved in said suit are or were the same as the issues and facts involved in the cause of action stated and relied upon by plaintiff in the second count of his petition herein, wherefore defendant pleads the said judgment and decree in bar of plaintiff's right of action under said second count herein.'' As already stated, the defendant offered the said judgment roll in the circuit court of Cook county in evidence as *res adjudicata* of the plaintiff's claim in this case, but now that the plaintiff offers the reversal of that judgment in the Court of Appeals and also in the Supreme Court of Illinois, defendant now says that the matters and facts in issue in the said suit in the circuit court of Cook county and in the Court of Appeals

and the Supreme Court of Illinois in no wise affect the issues involved in this case, to-wit, the ownership of the bonds claimed by the plaintiff in his petition. In the amended answer which defendant offered to file in this cause, after the final judgment of the Supreme Court of Illinois in plaintiff's favor, defendant abandoned the plea of *res adjudicata* set up in his former answer, and set up a plea that plaintiff had split up his right of action; that the plaintiff could have had his rights both as to the bonds involved in this suit and the stock claimed in that suit adjudicated in the Chicago case, which answer the circuit court refused to permit the defendant to file at that time, and defendant assigned that refusal as error in his motion for new trial.

Among other evidence offered on behalf of the plaintiff, there was a stipulation filed between the parties in which it was agreed that the six bound typewritten volumes of evidence taken before Mr. Cunningham, the referee, should be taken by the court as the transcript of the evidence upon which the case was submitted, and it is further stipulated that the opinion and mandate of the Supreme Court of Illinois should be admitted in evidence in connection with the other evidence and exhibits, and it was further stipulated that the defendant had not transferred to nor accounted to plaintiff for any shares of stock in the National Hollow Brake Beam Company since the 31st day of October, 1898, which was standing in his name on the books of the company at that time.

From the admissions in the record it appears that the defendant received 362 bonds of the American Trust and Savings Bank. Of these three hundred and sixty-two bonds the evidence shows that the plaintiff received one hundred bonds all of series L, and received half of series K, fifty bonds, and counsel for the plaintiff admits that the plaintiff received, or that the defendant was entitled to credit for, eighteen bonds of

series H and two bonds of series B. It also appears
that plaintiff received twenty bonds of series G. The
defendant admits that he received all of series M, one
hundred shares or bonds, and a half of series K, fifty
bonds, and ten of series G, in all one hundred and six-
ty bonds, and he asserts that he was entitled to retain
these bonds by virtue of an oral contract with the plain-
tiff which he made with the plaintiff before a certain
contract was entered into by the plaintiff and the Chi-
cago Equipment Company in regard to the readjust-
ment of the rent which the Equipment Company was
paying to the Hollow Brake Beam Company, and
known throughout the record as the "Rent Readjust-
ment Agreement." Plaintiff denies that there was
any such contract between himself and defendant.
Without attempting to quote from this great mass of
testimony, it must suffice to say that the defendant
claims that his contract with the plaintiff was made in
plaintiff's name and by agreement between them that
it should be so made and should appear to be the con-
tract of the plaintiff with the Equipment Company,
whereas the plaintiff insists in his testimony that this
could not have been and should not have been, as the
defendant, who was a large stockholder in the Equip-
ment Company, secured a large number of proxies
from other stockholders, and by his votes and the votes
of the proxies he caused the adoption of the contract
of the plaintiff with the Equipment Company, and any
arrangement between plaintiff and defendant by which
defendant would have been entitled to share in the bene-
fits and profits of that contract would have been illegal
and void, and as to the retention by the defendant of
these bonds with the apparent acquiescence of the plain-
tiff, plaintiff testifies that they were retained by the
defendant under an option which was given him by
plaintiff to keep the bonds and turn over to plaintiff
certain stocks in lieu thereof, which he failed and de-
clined to exercise. But, it was stated alternatively, that

he had said that if defendant was willing to do so they would pot and divide all profits, which would have included the profits that the defendant made as a stockholder in the Equipment Company, which were never tendered or offered to be given to the plaintiff, but that such offer would have been dividing the fruits of an illegal contract.

That the contract for these bonds of the Equipment Company was made in the name of the plaintiff and for his benefit, on the face of the written instrument, there can be no doubt whatever, and that the defendant received the same from the American Trust and Savings Bank as the agent for the plaintiff, there is no doubt, as his receipt offered in evidence fully establishes.

While it is true, as now contended by counsel for the defendant, that these bonds were not in suit in the case brought by the plaintiff for the stock in the circuit court of Cook county, Illinois, and subsequently awarded to the plaintiff by the judgment of the Supreme Court of Illinois, it is upon the testimony taken in that case that the defendant seeks to defeat this action for the bonds. His testimony in this record adds nothing to the testimony taken in that case as to establishing a contract between him and the plaintiff whereby he was entitled to half of the bonds which went to plaintiff under the contract known and called the "Rent Adjustment Agreement."

As to the plea of splitting up plaintiff's cause of action by bringing suit in the circuit court of Cook county for the stock, and by suing for the bonds in the circuit court in the city of St. Louis, it need only be said at this time that this suit for the bonds in the circuit court of St. Louis was begun first, and the suit for the stock subsequently in the Illinois courts, and that each suit was prosecuted to a final judgment without any plea to the jurisdiction of the circuit court of Illinois

on the ground that a prior suit was pending in Missouri on the same cause of action.

It should be stated in this connection that while the foregoing is the substance of the claims of the two parties in the circuit court, there was made for the first time in this court a claim that the defendant was entitled to the bonds in suit as a *gift* from the plaintiff, and much of the brief of the defendant's counsel is devoted to this new proposition in the case and it will be considered in the further discussion of the assignments of error presented by the defendant.

I. The refusal of the circuit court to allow defendant to file an amended answer upon the eve of submitting the case upon the evidence and proofs already taken is assigned as error by the defendant. On several grounds it is obvious defendant cannot complain of this action of the court, for the reason that his abstract contains no exceptions to the ruling of the court on that point, and for a much more satisfactory and substantial reason, because the proposed amendment was a clear departure from the theory of the answer, and the position which the defendant had assumed throughout the litigation up to that time. While our statutes are liberal in allowing amendments in aid of justice, it has been uniformly ruled by the courts of appeal and this court that the circuit courts are not bound to permit an amendment to an answer which substantially changes the defense on the eve of the trial of the cause. [Harrison's Administrator v. Hastings, 28 Mo. 346; Clark v. Transfer Co., 127 Mo. l. c. 270; Bank v. Goldsoll, 8 Mo. App. 595.]

II. The insistence that the plaintiff, by instituting a suit for the stock in the circuit court of Cook county, Illinois, and prosecuting the same to final judgment, thereby split up his cause of action and estopped himself from the recovery of the bonds in this case, we think is entirely untenable.

As already said this suit for the bonds was commenced in the circuit court of St. Louis prior to the beginning of the action for the stock in the circuit court at Chicago, and when that action was brought in Chicago, if there was any merit in this claim, then was the time for the defendant to plead it in that case, but he did not do so; but independently of the failure to *plead* a splitting of the cause of action, we think there was none in fact. The sole ground of the claim of unity between the two actions was the alleged contract by the defendant, which constituted the real bone of contention in this cause, and every court, except the circuit court of Cook county, before whom this question has come, has decided that there was in fact no such contract as the defendant pleads and attempts to establish. After a clear and exhaustive examination of all the evidence in the case, the master in chancery in the circuit court in Illinois found there was no such contract, or at least that there was no sufficient evidence to establish the same, and while the circuit court overruled the master's decision and opinion, the Court of Appeals and the Supreme Court of Illinois both sustained the master and in so doing announced the same rule in regard to the quantum of evidence required of the defendant to establish that contract that has obtained in this State for many years, to-wit, that the evidence must be clear and satisfactory, fully satisfying the conscience and judgment of the chancellor.

Much has been said in the course of argument as to whether the judgments of the Illinois courts should be treated as final adjudications of this controversy as to the title and ownership of these bonds, but after an examination of the testimony in the case we have reached the same conclusion, and in our opinion the defendant has not made out and supported his claim to these bonds by virtue of his alleged contract. Independently of the consideration that his claim for these bonds and the stock was such as to taint the whole

transaction with fraud and illegality, the evidence still falls short of that clear, cogent and definite character which would justify a court in decreeing that the admitted title of the plaintiff to these bonds should be transferred to the defendant. As said by the Supreme Court of Illinois in Leigh v. Laughlin, 211 Ill. l. c. 199: "There was no evidence of any definite statement or admission that there was such a contract or interest as claimed by the defendant." It is not practicable to set out in detail all the evidence which leads us to the conclusion we have reached. The principals to this controversy directly contradicted each other as to the existence of the alleged contract set up in defendant's answer, and while there is much testimony in the shape of letters and the statements of other parties tending to show that the plaintiff was willing to make a division of the profits derived from his various ventures with the defendant, it is quite clear to us that the defendant never accepted the propositions made to him by the plaintiff, and if the defendant's testimony is to be credited, it certainly places him in a most unenviable light as to the part he played in bringing about the ratification of the agreement of the plaintiff with the Equipment Company for the purpose of reducing the rent. There was testimony of outside parties that the plaintiff had said. that he and defendant were carrying the deal through; that they were both interested in it; and that they could not carry it through without the defendant's aid, and that when the deal was closed he and defendant would own the stock and be the Brake Beam Company, and other similar statements, but this is all consistent with the plaintiff's testimony; they were carrying the deal through and were both interested in it, the plaintiff as the contractor, and the defendant as the largest stockholder in the Equipment Company, and the proposed reduction of the rent, would be a great benefit to the defendant as a stockholder in the

226 Sup—41

Equipment Company. But the extravagant expressions of friendship between these parties after all fall far short of establishing the contract that the defendant was the owner of the bonds sued for in this case, or the shares of stock which were recovered by the plaintiff in the Illinois courts. We are clearly of the opinion that there was no splitting up of the cause of action so as to estop the plaintiff from recovering the bonds in this case, and the circuit court correctly ruled on that question.

III. But as already indicated in the statement, the defendant seeks upon this appeal to defeat this action on another and distinct ground, one not included in his answer, to-wit, that the bonds in question were *given* by the plaintiff to the defendant. Thus it is said by counsel for defendant, speaking of the issue in the Illinois case: "The matter determined in that case was that Leigh had not proven his agreement for a division of the shares of the Beam Company. The question here is not whether there was a contract between Leigh and Laughlin for a division of these bonds, *but was there in fact any such a division made?* If Laughlin had given these bonds to Leigh then that necessarily would exclude his right to recover judgment against Leigh for the value of the bonds which he had given years before."

While counsel say the question is not whether there was a contract between Leigh and Laughlin for a division of these bonds, unquestionably they led the court and the plaintiff by the allegations of defendant's answer to understand that it was a question, because he alleges that, "said 26,223 shares of stock and said 362 bonds *under the terms of the said agreements,* so made by the plaintiff with the said Chicago Railway Equipment Company and the said National Hollow Brake Beam Company, and said agreement between plaintiff and this defendant, became and were the joint property of plaintiff and this defendant." In a word,

this theory and claim of a gift of these bonds appears for the first time in the reply brief and the oral argument of counsel for defendant in this court. No such claim was pleaded in the answer of the defendant, but as already seen defendant claims the bonds under and by virtue of a contract and agreement made by the plaintiff. Neither was such claim advanced by the defendant in his testimony. This claim is also inconsistent with that advanced by the defendant in the Chicago case. As said by the master in chancery in that case: "The contract which Edward B. Leigh now alleges that he made with Henry D. Laughlin, was that Henry D. Laughlin agreed to divide with Edward B. Leigh equally the product of their joint endeavor of the purchase of the stock of the National Hollow Brake Beam Company. It is claimed on behalf of defendant Leigh, that he had *a lien on all of the bonds* and the certificates of stock that came into his possession during the transaction; that it is his right to retain the stock which he took in the division which was made thereof by himself, and the rule is cited in his behalf 'that where equities are equal a court of equity will not take from one an advantage he has acquired of his adversary by his superior diligence.'"

It would seem that this claim of a gift which is now advanced for the first time in this court is largely predicated upon two letters written by the plaintiff Laughlin to the defendant, one dated at Chicago, March 9, 1900, in which this sentence occurs: "Is it not also a fact that you clipped and collected the following coupons: Fifty series 'K (my half) due December, 1899, also eight series F due same date, also two series I due same date?" And another letter of March 15, 1900, in regard to an account rendered him by the defendant. Plaintiff proposes to accept among other items "Ed's one-half N. H. B. B. R. E. or C. R. E. bonds in lieu of $25,175.35." Thus it is attempted

out of these two items in this long correspondence to build up a gift of these 160 odd bonds. The Illinois Court of Appeals in discussing this item of evidence said: "It is argued that this expression (my half) shows that plaintiff was claiming only one-half of the bonds referred to. Without further explanation it is impossible for any one but the parties themselves to determine what bearing these words have, if any, on the controversy, or what they referred to. Plaintiff claims, and the figures are susceptible of the explanation, that in fact the bonds received pursuant to plaintiff's contract were not equally divided, but that defendant Leigh took only the bonds which corresponded to the par value of his stock in the National Hollow Brake Beam Company, to which bonds he was entitled in exchange for his stock had he turned it over to plaintiff as he was expected to do, and that plaintiff took the rest himself. If this view is correct, it tends to show that defendant did not at that time claim half interest in these bonds which were a part of the proceeds of the rent readjustment transaction."

The United States Circuit Court, in the case of Ernest Magerstadt v. The American Surety Company of New York, had the title to the 272 bonds which defendant received on January 28, 1899, under investigation upon the same state of facts and evidence that appears in this case, and reached the conclusion just as we have, "that at the time defendant Leigh so received said bonds there was not, nor had there been, nor was there thereafter any contract or agreement between him and said Laughlin, whereby said Leigh had any title or claim of title to said bonds or any part thereof; that said bonds were not and never were the joint property of Laughlin and Leigh, but were and remained the property of Laughlin only, and that said Leigh received the same solely as the agent of said Laughlin."

Now as to the other letter of the 15th of March, 1900, the whole taken together shows that the plaintiff was proposing that he and defendant get together and consummate a trade on the basis that he, Laughlin, "will accept Ed's half N. H. B. B. good assets, if he wishes to sell, or C. R. E. bonds in lieu." At the time this letter was written, defendant had an inchoate interest in the assets of the N. H. B. B. Co., contingent upon his making the proposed "pot and divide." He also had an inchoate interest in one-half of the long-term bonds of the C. R. E. Company, series M, and one-half of series K, contingent upon his either exchanging stock for bonds or upon his making a "pot and divide" or both, but this contingency was never fulfilled. On the contrary it appears that defendant considered his chance to control the Beam Company would make him more money and therefore he retained his individual stock for that purpose (Leigh v. Beam Company, 224 Ill. 76), and having the certificates of stock and bonds both in his possession he proceeded to appropriate both, in accordance with his own wishes, without waiting for the proposed preliminary that he and Laughlin should get together. But taking both of these letters together (and they constitute practically the whole basis of the theory of a gift), when they are considered in connection with the pleadings in the case and the contentions of the defendant and his counsel in this long drawn out litigation in the courts of Illinois and in this State, they are utterly insufficient to sustain the claim of a gift by the plaintiff of these bonds to the defendant.

There are other technical propositions advanced in this case, but we have endeavored to get at the bottom of the real controversy between these parties and have read these detailed statements and letters passing between these parties and we have reached the conclusion at which all the other courts, both Federal and State, have arrived, except the circuit court

of Cook county, Illinois, and that is, that the bonds in suit were the property of the plaintiff at the time of the commencement of this action, and that the several defenses interposed by the defendant are not supported by the evidence in his behalf, and accordingly the judgment of the circuit court of the city of St. Louis should be and is affirmed. *Burgess* and *Fox, JJ.,* concur.