Lewis Amos, Respondent, v. Fred W. Fleming, et al., Receivers, Kansas City Railways Company, Appellants.*

Kansas City Court of Appeals.   May 3, 1926.

560

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 710, n. 41; Carriers, 10CJ, p. 1011, n. 83; p. 1083, n. 71; p. 1089, n. 98; p. 1165, n. 21; p. 1166, n. 22; Pleading, 31Cyc, p. 393, n. 41; p. 449, n. 66; Trial, 38Cyc, p. 1605, n. 66; p. 1721, n. 48.

*Gamble, Trusty & Pugh* for respondent.

*Chas. N. Sadler, E. E. Ball* and *Louis R. Weiss* for appellants.

ARNOLD, J.—This is an action in damages for personal injuries alleged to have been received by plaintiff while attempting to enter a street car operated by defendants.

The defendant Kansas City Railways Company is a corporation which, at the time of the alleged injury in suit, was in the hands of Fred W. Fleming and Francis M. Wilson, receivers, named parties defendant. As receivers, these defendants operated a system of street railways in the city of Kansas City, Mo., and environs. As a part of said system there was in operation and under the direction of said receivers, a line known and designated as the Fairmount Park line which crosses the Blue River at a point about a quarter of a mile east of the village of Sheffield, now within the city limits of Kansas City. The tracks of said street car line cross the Blue River in an east and west direction, over a bridge used for such purpose only. Immediately east of said bridge and about 125 to 150 feet from the east end thereof, the company maintains a station for receiving and discharging passengers, known as Highlander Station. A shed, or shanty, is located there for the convenience of street car patrons and is lighted at night by two or three electric lights. About twenty-five feet east of said station the street car tracks and the Kansas City Southern Railway tracks cross at right angles and the street cars going in either direction are required to make a dead stop before crossing said railway tracks.

On the morning in question, February 1, 1923, one of defendants' street cars, proceeding west, between six and seven o'clock in the morning, encountered a freight train on the said railway tracks which had pulled upon the crossing and stopped. The street car approaching from the east stopped before it reached the railroad tracks and remained standing until the freight train cleared the crossing and

then proceeded to Highlander Station where it stopped to discharge some passengers.

Plaintiff and his companion, one Mose Newman, alighting from the caboose of said freight train, about forty or fifty feet south of the street car track, were told by the train conductor to proceed to the street car station where they could board a car for the city. Plaintiff and Newman then walked around the rear end of the standing caboose and proceeded toward Highlander Station. At this point there is some divergence in the evidence of the parties hereto as to what took place, but it is agreed that after the freight train cleared the crossing, the street car proceeded west, crossed the railway tracks and stopped at Highlander Station.

Plaintiff and Newman testified that when they stopped plaintiff was near the front of the car and the motorman motioned them to go to the rear, which they did, and there they saw some passengers alighting, one of whom was an elderly woman with a bundle, or bundles, which the conductor handed to her just as plaintiff placed his foot on the first step in an effort to get on board the car. It is not disputed that the street car was delayed three to four minutes waiting for the train to clear the crossing and that by reason thereof, the car was that length of time behind its schedule.

Plaintiff stated that as the old lady got off, he placed his foot upon the step while the car was standing and made an effort to get in but the door was closed before he succeeded in getting inside the vestibule, and the car started; that the conductor looked at plaintiff; that plaintiff beat upon the door with his hand and the conductor reached over and got hold of something that looked like a lever inside the glass door. Plaintiff expected the car to be stopped and the door opened; that when the car had proceeded a distance of approximately 130 feet, he was struck by an upright part of the bridge and knocked from the step to which he was clinging, and injured; that he was not familiar with that street car line and the proximity of the bridge and the conductor gave him no warning thereof. Plaintiff stated that at the motion of the motorman, he went from the front to the rear of the car, waited for persons to get off, and then took hold of the front handhold; that when he came in contact with the upright of the bridge, his body was thrown against the glass of the door, breaking same and that the weight of his body and the force of the impact pulled the handhold from the body of the car.

Witness Newman corroborated plaintiff in these statements while the testimony of defendants' witnesses is flatly contradictory of that of plaintiff's witnesses upon the circumstances immediately surrounding the accident.

One Leonard W. Crump, conductor of the street car in question, testifying for defendants, stated his car stopped on the east side of the railroad crossing for three or four minutes; that when the freight

train had cleared the crossing, the car proceeded over the intersection and made the stop at Highlander Station; some passengers were there discharged after he opened both doors; that there were four or five people standing in the rear vestibule; that he stood with his back to the front facing the rear of the car; that there were no people at the station to board the car and he then closed the doors which are held closed with a wooden button; after closing and fastening the doors, he gave the usual signal and the car started; that he did not see plaintiff and knew nothing of him until the crash of glass in the door.

The testimony shows there are two doors opening from the vestibule, thus forming an exit on one side of the double doors and an entrance on the other. The conductor stated the crash broke the glass in the exit door and tore off the handle; that after the injury, plaintiff was not on the bridge but, in fact, was eight or ten feet east of the end of the bridge. He also stated that the car crew expected to make up the time lost in waiting for the freight train.

Plaintiff's witness Newman testified that after plaintiff had been "scraped" from the car, he found him lying on the ties between the rails of the track, on the bridge.

There were six witnesses for defendants who corroborated the conductor as to the manner in which the door was closed and other things done by him before and during the closing of the door. There seems to be no conflict in the evidence to the effect that when the crash of the door occurred, the conductor gave the emergency stop signal and that the car crossed the bridge in obedience to the company's rules, and stopped beyond the west end thereof.

Charles Eberly, the motorman, testified that he saw no one waiting at Highlander Station to board the car, and that he had motioned no one to go to the rear of the car for entrance. The testimony shows that at the time the injury occurred it was not yet daylight and that the lights at the station were burning. The evidence in behalf of defendants tends to show that the doors in this particular car are not operated by a lever as are the doors on many of the cars operated by defendants. The testimony of all the rear vestibule witnesses was to the effect that there was no woman, young or old, with or without packages, who alighted from the car at that time.

The amended petition charges that the bridge and structure across the Blue River were so close to the street car track over which the car in question was to pass that a person upon the steps of the car would be struck and knocked therefrom and probably injured and that these facts were well known to defendants and their employees operating said car. The negligence charge in the petition is as follows:

"He further says that as said car was about ready to start or had just started, one of which is true, the plaintiff for the purpose of tak-

ing passage as a passenger upon said car, stepped upon the step and took hold of the handle and before he could get into the vestibule said car was suddenly driven forward and the door at the vestibule closed so that he could not enter and thereupon the plaintiff hammered·upon the glass door to attract the conductor's attention and to .get said door open and whereupon said conductor turned to said· door and looked towards and saw the position of the plaintiff, but did not open said door and .did not warn the plaintiff of the danger of said bridge and then said conductor turned away and left said door closed all of which said time said car was proceeding towards said bridge and said conductor negligently failed to open said door and negligently failed to warn the plaintiff and negligently failed to stop said car before the step on which said plaintiff was riding reached said structure and bridge, and by reason of the negligence of defendants' said conductor the plaintiff was struck near the end of said bridge or a portion of said bridge and he does not know which but says that one or the other is true and·he was knocked from the step of said car and greatly injured," etc.

Damages are asked in the sum of $15,000.

The answer, after admitting the status of defendants as stated in the petition, is a general denial. Further, the answer pleads contributory negligence in that plaintiff attempted to board the street car after the invitation to board the same had been closed and the street car had started forward and was in motion. The reply was a general denial and upon the pleadings thus .made, the cause went to trial to a jury. There was a verdict and judgment for plaintiff in the sum of $4000. Motions for a new trial and in arrest were overruled and defendant appeals.

At the close of all the evidence, plaintiff was permitted to amend by interlineation his amended petition. In support of the appeal, defendants charge the court erred in permitting plaintiff to amend his petition. in this manner, at the close of all the evidence.

Prior to the amendments by interlineation, the amended petition reads, in part, as follows:·

"He further says that as said car was about ready to start or had just started, the plaintiff," etc.

The interlineation consists in the insertion, after the word "started" of the words "one of which is true." Also, farther down in the same paragraph, it is charged that after the doors were closed, the plaintiff hammered upon the door to attract the attention of the conductor

·"whereupon said conductor turned to said door and looked towards"—there was permitted to be interlined the words—"and saw the position of plaintiff."

The amended petition then reads as quoted above. Defendants argue that, although the petition originally was uncertain, by allowing the amendments, it was impossible to tell whether this was an action based upon a negligent injury to a passenger, or one based upon a negligent injury to a trespasser—two wholly separate and distinct causes of action, and that the court erred in permitting the amendments.

The language of the statute, pertinent to this question, would seem to determine the point against defendants' position, as follows: [Section 1274, R. S. 1919.]

"The court may, at any time before final judgment, in furtherance of justice, and on such terms as may be proper, amend any record, pleading, process, entry, return or other proceedings, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

It has been held and is the law that it is discretionary with the trial court to permit amendments to be made out of time. [Clark v. Ry. Co., 127 Mo. 255, 30 S. W. 121; Carr v. Moss, 87 Mo. 447; Laughlin v. Leigh, 226 Mo. 620, 639, 126 S. W. 743.] The first of the interlineations, of which defendants complain, seems to plead the particular matter in the alternative, and this is proper under the provisions of section 1254, Revised Statutes 1919, which reads:

"Either party may allege any fact or title alternatively declaring his belief of one alternative or the other, and his ignorance whether it be the one or the other."

It is observed that the testimony of plaintiff and Newman to the effect that the conductor was looking toward plaintiff and saw him was received without objection, and all the testimony of defendants' witnesses as to what the conductor was doing, after the car started, tended to show that he did not see plaintiff and did not know where and when he got on the step. In order to meet the situation, the amendment was proper. Moreover, the record fails to show there was any affidavit of surprise or motion for continuance filed. One or the other of these motions was necessary to support this contention of defendant. We hold there was no error in the respect charged.

Defendants allege the court committed error in giving plaintiff's instruction No. 1, and while this instruction is of considerable length, we deem it necessary to set it out in full, as follows:

"When a car is stopped and standing at a regular stopping place for the purpose of receiving passengers and a person is boarding such car at the regular entrance for the purpose of becoming a passenger thereon, the law charges the conductor with knowledge of the presence and position of such passenger; and if you find from the evi-

dence that the car referred to was stopped a short distance east of the bridge referred to for the purpose of discharging and taking on passengers and that said place was a regular stopping place for such purpose; and if you further find from the evidence that while said car was so stopped and standing, if so, plaintiff got upon the step of said car and attempted to enter the vestibule and become a passenger thereon and that while he was so doing, if so, the car was suddenly driven forward and the vestibule door was closed so that he could not enter and that plaintiff remained on the step, if so, in a position where he was in danger of being struck by the bridge, if so, or an object thereon, and that the conductor knew or by using the highest degree of care (as defined by other instructions herein), could have known of all the aforesaid facts, if you so find them to be the facts, in time, by the exercise of the highest degree of care to have opened the vestibule door and permitted the plaintiff to enter before being injured or to have caused said car to be stopped before the plaintiff was injured, if so, and that said conductor negligently (as defined by other instructions herein) failed to exercise such highest degree of care to cause the car to so stop and negligently failed to exercise such care to open the doors and let the plaintiff in before he was injured, if so; and if you further find from the evidence that as a direct result of such negligence of the conductor if any, the plaintiff was knocked from the step by the bridge or an object thereon and that he was thereby injured, if so and that at all times referred to in the evidence plaintiff exercised ordinary care for his own safety if so, then your verdict must be for the plaintiff and against the defendant.''

It is insisted this instruction places upon defendants the duty of exercising the highest degree of care—that degree of care which the law imposes only when the relation of passenger and carrier exists. The testimony on behalf of plaintiff was to the effect that while a street car was standing still at the station, with the doors open, plaintiff got upon the steps of the car for the purpose of becoming a passenger, but that before he got inside, the car door was closed and the car started forward. One Bobbitt, a witness for defendants, testified that he saw plaintiff jump upon the step of the car after the door was closed, while the car was moving, and had already left the station. This testimony, obviously, raised a question of fact as to whether or not plaintiff was a passenger on the car. It is urged that the instruction assumes that plaintiff was a passenger, without defining what is meant by the term *passenger*.

We think the instruction does not require actual knowledge on the part of the conductor, or that he must actually have seen plaintiff on the step, but that it tells the jury that if they find plaintiff got on the step while the car was stopped at a regular stopping place and that he attempted to enter the vestibule and become a passenger, and

that he was on the step in danger of being struck and injured, then defendants would be liable, if defendants knew, or by the exercise of the highest degree of care might have known, of said facts in time to have opened the vestibule door and permitted plaintiff to enter, or in time to have caused the car to stop before he hit the bridge, provided the conductor failed in these duties.

There is substantial evidence to form a basis for the instruction and while, as we read it, the instruction does not assume that plaintiff was a passenger, it requires a finding of facts that would constitute him a passenger and does not define what is meant by the term *passenger*. But we think this situation is not at variance with the rule applied in Banks v. Railways Co., 280 Mo. 227, 217 S. W. 488; Nolen v. Railroad, 250 Mo. 602, 157 S. W. 637. We do not think the instruction erroneous because, while it states the highest degree of care is required of defendants and does not, in specific terms, define "passenger," it does require a finding of facts which are tantamount thereto. That is, if the jury found the facts required in the instruction, then they found plaintiff was a passenger. [McMahon v. Rys. Co., 233 S. W. 64; May v. Railroad, 225 S. W. 660, 664 (Mo.).] A review of defendants' citations on this question shows they are not in point.

Defendants also complain that the court erred in giving plaintiff's instruction No. 2. It is urged this instruction conflicts with instruction No. 1, and is based upon a different theory of the case. Instruction No. 2, it is claimed, is based upon the last-chance doctrine, that is, upon the premature starting of the car from a regular station while plaintiff was in a position of peril, and that this fact was known to defendants. It is pointed out that the theory of this instruction was based upon the petition as amended at the close of all the evidence and that the petition, even with the amendment, did not authorize the submission of the last-chance theory.

In the case of Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 1. c. 484, the Supreme Court designates the constitutive facts of a cause of action under the humanitarian or last-chance rule, as follows:

"(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant, after receiving such notice, had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured."

We think the petition charges these constitutive facts—though not in the order enumerated—and there was substantial testimony in support thereof. [Laun v. Railway, 216 Mo. 563, 116 S. W. 553.] Moreover, defendants are not in position to question the right of plaintiff to instruction No. 2 for the reason that instructions "H"

and "I" for defendants instructed on the same theory. Defendants therefore may not now complain. [Torrance v. Pryor, 210 S. W. 430.]

It is charged the court erred in refusing to give defendants' instructions "D" and "E." Instruction "D" is based upon assumption of risk. The authorities cited by defendant lay down the rule that where a person attempts to board or leave a moving car, and there is no act of negligence on the part of the carrier shown beyond the fact that the car was moving at the time, one cannot recover for an injury caused solely by the ordinary movement of the car. In the case at bar it is not charged, nor is there any testimony to show, that plaintiff was injured by the ordinary movement of the car. The case was not tried on that theory, and it would not have been proper to have given the instruction.

Instruction "E" sought to tell the jury that if plaintiff boarded the street car while it was in motion, he assumed all the risk incident to the ordinary movements of the car and to the presence of dangerous obstacles near the track. We hold there was no error in the refusal of this instruction, since, to have given it, would have been to submit an instruction flatly contradictory of plaintiff's instruction No. 2, which we have held proper. The same rule applies to defendants' refused instruction "G."

It is claimed the court erred in refusing defendants' instruction "J" as offered. The instruction directed the jury to find for defendants under all the instructions, if plaintiff was guilty of contributory negligence of any kind. Of course, in that form the instruction was improper because it ignored the humanitarian rule presented in plaintiff's instruction 2, and defendants' instructions "H" and "I" on the humanitarian rule. Therefore the court properly modified instruction "J" by adding "unless you find the facts to be as set out in instruction No. 2." [Roques v. Butler, etc., Co. (Mo. App.), 264 S. W. 474-478; Williams v. Fleming, et al. (Mo. App.), 267 S. W. 10; Schmitter v. Rys. Co. (Mo. App.), 245 S. W. 629.]

Finally it is urged the court erred in overruling defendants' motion for a new trial, because the verdict is excessive. Defendants, in their brief, say:

"We are not going to urge this point, but we emphatically say the verdict is for the wrong party . . . and that a new trial should have been granted for the errors pointed out."

Having ruled against defendants on "the errors pointed out," it remains only to affirm the judgment. It is so ordered. *Bland, J.*, concurs; *Trimble, P. J.*, absent.