STATE OF MISSOURI at the Relation of LEONA KURZ, Relator, v. EWING
    C. BLAND, HENRY L. ARNOLD and FRANCIS H. TRIMBLE, Judges
    of the Kansas City Court of Appeals.—64 S. W. (2d) 638.

Division One, October 19, 1933.*

*Joseph H. Glass* and *Chas. N. Sadler* for relator.

NOTE: Opinion filed at May Term, 1933, August 3, 1933; motion for re-
hearing filed; motion overruled August 24, 1933; motion to transfer to
Court en Banc filed; motion overruled at September Term, October 19, 1933.

942

*Horace Guffin* and *Edmund B. Smith* for respondents.

HAYS, J.—On certiorari to the respondents, judges of the Kansas City Court of Appeals, by which it is sought to quash the record of said Court of Appeals made in the case of Leona Kurz, plaintiff, v. Greenlease Motor Car Company, a corporation, and others, defendants. The decision of the Court of Appeals will be found in 52 S. W. (2d) at page 498.

It appears from the opinion rendered by the respondents that the plaintiff, while riding as a passenger in a taxicab, was injured when, at a street intersection in Kansas City, a collision occurred between the taxicab and an automobile owned by defendant, Greenlease Motor Car Company, a corporation, engaged in the purchase and sale of automobiles. She sued said motor car company and the owner of the taxicab and recovered a verdict and judgment for her injuries against the copartners owning the taxicab and against the Greenlease Motor Car Company, and the latter appealed from that judgment to said Court of Appeals, wherein said judgment was, as against said Greenlease Motor Car Company, reversed.

At the time of the collision one Ben Millstein was driving defendant's automobile, a sedan. After the collision occurred the drivers got out of their respective cars and talked together. The plaintiff thus detailed the conversation: "Our driver of our car asked the boy, 'Who belongs to that car?' and he said, 'The Greenlease Motor Car Company;' and our driver asked him 'How did you get that car?' and he said 'I am working for them.' That's what I heard." She further testified as to being taken home in the sedan by the driver thereof and as to this statement being made by him en route: "He told me that he took that car out for a demonstration because his father would buy that car." The lady who was at the time riding with the plaintiff testified: "I heard him say that he was working for the Greenlease Motor Car Company and that his father was considering buying a car and that he was demonstrating this car for his father." The recital in the opinion concludes: "This was the whole of the testimony in plaintiff's behalf relied upon as tending to show that Millstein, the driver of the sedan, was the agent of the defendant motor car company. All of said testimony was objected to by this defendant and after its admission this defendant unsuccessfully moved to strike it out as being wholly incompetent and inadmissible to prove agency by the declaration of the alleged or supposed-to-be agent."

At the close of plaintiff's case in chief this defendant tendered its demurrer to the evidence and the same was by the court denied.

Thereupon evidence on behalf of the defendant was introduced which tended to show the following: Phillip Millstein, father of the driver of the sedan, had been negotiating with said Motor Car Company for the purchase of a car such as the sedan involved in the collision and had driven this car that afternoon between four and five o'clock and had left it at his own place of business awaiting the arrival there of a Mr. Boult, defendant's sales manager who was to come for it. Boult came in his own car. There being two cars and only Boult to drive them, Ben Millstein, at his father's suggestion and with Boult's acquiescence, drove the sedan to defendant's place of business. After arriving there, desiring to visit a boy friend then confined in Research Hospital, he asked and obtained Mr. Boult's permission to use the car in calling upon his sick friend there. Ben Millstein was not in the employ of the defendant Motor Car Company but worked at his father's place of business. Arriving at the hospital, Millstein found at the bedside of his friend the latter's mother and a young lady. Upon leaving the hospital, the ladies accepted Ben Millstein's offer to take them in the sedan to their respective homes. And they proceeded and were en route when the collision occurred. This, as stated in the opinion, was all the evidence in the entire case bearing upon the question of Ben Millstein's alleged agency for defendant Motor Car Company.

And being all the evidence recited in the opinion, it is all the evidence before us, since in proceedings such as this, we cannot go beyond the opinion for the facts.

The Greenlease Motor Car Company's demurrer offered at the close of all the evidence in the case was denied. The case was ruled by the Court of Appeals upon the error in the denial of the last demurrer, and the decision was based on the lack of substantial evidence of Millstein's agency. This ruling is claimed by the relator to be in conflict with controlling decisions of our court.

■ There are but three propositions of law before us. The first is upon the relator's contention that—"Proof of ownership of an automobile makes a prima facie case of agency of the driver and liability of the owner for the negligence of the driver which entitles plaintiff to have her case submitted to the jury on that issue." Relator cites in support of the proposition the cases of O'Malley v. Herman Construction Co., 255 Mo. 386, 164 S. W. 565; Brucker v. Gambarno, 9 S. W. (2d) 918; Karguth v. Donk Bros. Coal & Coke Co., 299 Mo. 580, 253 S. W. 367, and Barz v. Fleischmann Yeast Co., 308 Mo. 288, 271 S. W. 361.

Before entering upon the examination of these authorities it should be noted that the decision of the Court of Appeals which we are to review, does not, as relator seems to be of impression it does, involve the question of the sufficiency of plaintiff's prima facie case to surmount the demurrer offered at the close of plaintiff's case in chief, and it is not upon the state of the record at that juncture of the case that the respondents predicated their opinion; but the case was on appeal determined upon the question of the substantiality of plaintiff's prima facie case as finally submitted to the jury upon the facts then in this record.

The cited case of O'Malley v. Construction Co., supra, was ruled on demurrer offered at the close of plaintiff's case in chief. The defendant offered no evidence in rebuttal but stood on his demurrer. It is thus apparent the case is without application to the situation here.

In Brucker v. Gambarno, supra, there was evidence for plaintiff that the defendant, himself an occupant of the car at the time of the casualty, stated at the scene thereof that he was the owner of the car which struck and injured plaintiff. In that case we held that plaintiff was entitled to go to the jury because of absence of countervailing evidence on behalf of the defendant. The proof of the ownership of the car at the time of the casualty, and the absence in the case of any rebutting evidence on behalf of defendant, distinguishes the case on the facts from the case at bar and also the cases of Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854; Hays v. Hogan, 273 Mo. 1, 200 S. W. 286; Barz v. Fleischmann Yeast Co., supra (to both of

which reference will later be made), and Kiem v. Blackburn, 280 S. W. 1046, discussed in said Brucker case.

The case of Karguth v. Coal, etc., Co., supra, did not rest upon presumption. Our court said, l. c. 597: "It is clearly manifest from the foregoing that plaintiff was not relying alone on presumptions, but produced clear direct and substantial testimony . . . which warranted the jury in finding the issues for the plaintiff." It is quite obvious this case lends relator no support. As our court said in Diehl v. Fire Brick Co., 299 Mo. l. c. 655, 253 S. W. 984: "Such facts constitute substantial proof of the existence of such relationship (principal and agent) and not merely proof of facts from which such relationship may be presumed or inferred, in the absence of proof to the contrary. The case of Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854, can thus be distinguished. There are facts to be weighed by the jury against the proof of other facts which tend to show such relationship did not in fact exist, even though such other facts are uncontradicted."

The case of Barz v. Fleischmann Yeast Co., supra, is the case upon which relator seems to place her chief reliance. In a discussion of that case, in the somewhat recent case of State ex rel. v. Daues, 323 Mo. 388, l. c. 403, 19 S. W. (2d) 700, we took occasion to note that the opinion in the Barz case is not controlling as a ruling or announcement of any rule or principle of law by this court, for that said opinion did not have the concurrence of a majority of the judges inasmuch as only three of the judges concurred in the opinion, an equal number dissented thereto, and one of the judges concurred only in the result of the decision in the case; so that, while there was a decision reached on the facts of the case there was no authoritative opinion or pronouncement of the law of the case made by a majority of the members of our court en banc wherein the Barz case was heard and adjudicated. Moreover, the facts in that case were not similar to those of the case at bar. There the vehicle was a motor delivery-truck with the name of the defendant appearing thereon. The opinion states that: "respondent concedes plaintiff made a prima facie case." So also was the truck driver's declaration to the effect he would proceed to deliver goods, quite different from the driver's declarations in the instant case. The former apparently related to the purpose or business on which the driver had been bent, as he impliedly stated, and which was interrupted for the time being by the casualty.

For the further discussion of this point it will be assumed that the declarations of Millstein, the driver, were inadmissible and gave no support to plaintiff's case; but in the course of this opinion the question now reserved will, of course, be determined. It may also be well to note in this connection that it is stated in relator's brief— "We have never claimed that agency could be proven by the declara-

tions of the agent alone;" and again: "Nobody ever claimed that agency could be shown by declarations of the agent, but when a prima facie agency has been established then declarations are admissible." It appears from the record that there was in the case no factual evidence of agency. The ownership of the sedan was in the evidence admitted to be in the defendant.

■ Taking relator's case as resting solely upon the fact of the casualty and the ownership of the car driven by Millstein, which co-operated with the taxicab in the infliction of the injuries, what was the presumption, and the nature of it, that arose upon such showing? The leading case of our court en banc dealing with this question is Guthrie v. Holmes, supra. In that case, 1. c. 233, it is said: "If it be proved . . . that the car was owned by defendant, and if it be further proved . . . that the chauffeur was in the general employment of defendant, then the presumption arises that such chauffeur was within the scope of his employment when the accident occurred. . . . From such a showing the plaintiff has a prima facie case. . . . This presumption cannot stand in the face of positive proof of facts to the contrary; and, where the plaintiff has relied upon such presumption and it has been opposed by positive evidence to the contrary, he must then produce evidence tending to disprove the defendant's positive testimony, or his prima-facie case will fall."

This pronouncement on the scope and evidential effect of the presumption, a rebuttal one, was explained and illustrated by the subsequent case en banc of Bond v. St. Louis-San Francisco Railway Co., 315 Mo. 987, at pages 1001-2. The scope or effect of presumption as laid down in the Guthrie-Holmes case has never since been authoritatively broadened or extended by our court en banc and it is our court's last controlling decision on that subject. The following is a leading case in which the propriety of the application of a presumption of this nature to a situation where the driver was not shown to have been, at the time involved, in the general employment of the owner of the offending vehicle: Hays v. Hogan, 273 Mo. 1, 200 S. W. 286, heard in Division One.

That case dealt with a situation where an automobile, owned by a father and being, with his consent, driven by his son, met with a casualty, due to the son's negligent driving, which resulted in an injury to the plaintiff. The action brought thereon for damages was against the father who was sought to be held liable on the doctrine of *respondeat superior*. We held that the facts just stated raised no presumption that the son was acting within the scope of his authority or that he was acting as his father's agent or servant, and that to hold to the contrary would be to base one presumption upon another, namely, that the son was such agent and was acting within the scope of his authority.

Division Two of our court in Murphy v. Loeffler, 327 Mo. 1244, 39 S. W. (2d) 550, on facts analogous to those in Hays v. Hogan, supra, denied the application of the presumption.

The doctrine the relator contends for happens to be that which pertains to the question of *res ipsa loquitur*, which, as regards presumptions, is that the presumption in a case founded on that doctrine is one which relates to the burden of proof as distinguished from the burden of evidence. Our court has held that the burden of proof never shifts and that the presumption raised by the doctrine *res ipsa loquitur*, relating as it does to the burden of proof, remains in the case to the end and will take the case to the jury, notwithstanding the evidence, however probative, given in rebuttal on behalf of the defendant. [Bond v. St. Louis-San Francisco Railway Co., supra, 1. c. 1003; McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557; Conduitt v. Trenton Gas & Elec. Co., 326 Mo. 130, 1. c. 143, 31 S. W. (2d) 21.]

The next contention of the relator is, that having made, so she states, a prima facie case of ownership of the automobile and of the agency of the driver, together with his actionable negligence and the injury resulting therefrom, such prima facie case cannot be destroyed by parol evidence introduced by the defendant. The authorities tendered in support of that proposition are these: Gannon v. Gas Light Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907; Diehl v. Fire Brick Co., 299 Mo. 641, 263 S. W. 984; Barz v. Fleischmann Yeast Co., supra, and Peterson v. Railroad, 265 Mo. 462, 178 S. W. 182.

The Gannon case was, as stated therein, and under the petition as construed in the opinion (1. c. 511-15), a *res ipsa loquitur* case and the presumption dealt with was, as in the Bond case and McCloskey case, supra, a substantial one that related to the burden of proof as distinguished from the burden of evidence. Because of the wide difference between the presumption applied there and the presumption involved here it is manifest, from the observations made in the paragraph preceding next but one, that this case is not germane to the question now under consideration. Attention has hereinabove been given the Barz case. Diehl v. Fire Brick Company, furnishes relator no support whatever. Quite the contrary. Peterson v. Railroad can find no application here. It was a case of substantial factual evidence pro and con as between the parties, and presumptions were in nowise involved or referred to.

The third and last contention made is, that the declarations of Millstein, the driver, made at or shortly after the time of the injury, were competent, both upon the question of ownership of the car and on the question of Millstein's agency and its scope, and upon the sufficiency thereof to take the case to the jury finally. With respect to the proof by the declarations, even if they be competent evidence, we here observe, as has been demonstrated in the discussion

preceding, relator's case would still be insufficient because lacking in the element of agency and of the driver's action at the time in question being within the scope of his authority.

But to pursue further the matter of alleged conflict in decisions: relator argues the effect of, and relies upon, as conflicting with respondents' opinion with reference to declarations, the cases of Peck v. Ritchie, 66 Mo. 114, and Barz v. Fleischmann Yeast Co., supra.

This question appears to have been determined by the Court of Appeals in relation to the state of the record when the final demurrer was ruled. This was proper. As the defendant's objections to the reception and consideration of the declarations as evidence in the case had been duly made and preserved, the circumstance that the declarations were received in evidence as a part of relator's case in chief and not by way of rebuttal upon the part of relator is a matter of no importance though stressed by relator, as the legal effect was the same at that stage of the case. It was the trial court's duty then to reject this testimony if deemed incompetent or inadmissible or if deemed inadequate as tending to show the driver's agency or his being engaged in the work of the defendant. There is no contention that it was offered for any other purpose than to prove agency and the ownership of defendant's car. It then became the duty of the trial court to reject the declarations and to sustain the final demurrer.

Relator's mode of reasoning would distort this rule into a fallacious one permitting the declarations themselves to prove the agency and from that status permitting the inference to be drawn that the agent's tort was committed while he was acting within the scope of his authority and not in his own individual business or enterprise. And this irrespective of the nature and substance of the declarations. The statements were, too, completely wanting in spontaneity. They were only in response to inquiries. That they were no part of the matter of any business then depending of the defendant; and that they had no tendency to illustrate the litigated act, the collision, then an accomplished fact, but referred to a matter wholly apart therefrom— plainly appears. For any and all these reasons they were, therefore, no part of the *res gestae*. See authorities collated in State v. Reeves, 195 S. W. (Mo.) 1027, l. c. 1030.

Were the statements admissible under the rule *respondeat superior?* As was said in Redmon v. Railroad, 185 Mo. l. c. 12, 84 S. W. 26, in applying that rule: "The question arises in each case, were the statements of the agent contemporary with the transaction and illustrative of its character, or merely a subsequent narrative of how it occurred or an explanation of how it might have been avoided? If the latter, they are inadmissible. . . . Though thus soon after the collision it seems to us to be apparent it was a recital of the cause of it, and no part of the transaction while passing, and

the statement for this reason falls within the doctrine announced by Judge Scott in Rogers v. McCune, 19 Mo. 557, and uniformly adhered to by this court in subsequent decisions.''

In the case of Peck v. Ritchie, supra, cited and relied on by the relator, the rule is stated to be this: ''That the declarations of a person, who assumed to act as agent of another, are not admissible to establish the agency is well settled; but it is equally well settled, that *after* a party alleging the agency has made a prima facie case of agency against the principal, any declarations made by the agent in the prosecution of, and relative to the business contemplated by such agency, are admissible against the principal.''

Both the cases just quoted from are followed in our somewhat recent case of State ex rel. Vesper-Buick Auto. Co. v. Daues, 323 Mo. 388, 19 S. W. (2d) 700, upon which the decision of the Court of Appeals is made to rest as regards this question, and to which—correctly stated by that court to be the latest ruling of our court on this question—their said decision conforms.

Upon this record we do not find the decision under review to be in conflict with any latest or controlling decision or ruling of our court.

Our writ issued herein is therefore quashed. All concur.

---

*NOTE: Opinion filed at May Term, 1933, August 3, 1933; motion for rehearing filed; motion overruled August 24, 1933; motion to transfer to Court en Banc filed; motion overruled at September Term, October 19, 1933.