# OCTOBER, 1937.

PRESTON MULANIX, RESPONDENT, v. W. T. REEVES AND WILLIAM N. REEVES, BY HIS GUARDIAN AD LITEM, CHARLES E. MURRELL, JR., APPELLANTS.—112 S. W. (2d) 100.

Kansas City Court of Appeals. November 15, 1937.

*Henderson & Deacy* and *Murrell & Murrell* for appellants.

*Rieger & Rieger* and *E. M. Jayne* for respondent.

REYNOLDS, J.—This is an appeal by the defendants from a judgment for $1750 rendered against them in favor of the plaintiff in the Circuit Court of Adair County, Missouri, for damages for personal injuries caused by an automobile (of which the defendant W. T. Reeves was owner) being driven by his son, the defendant William N. Reeves, on December 11, 1936, colliding with a trailer upon which the plaintiff was riding, which at the time was being drawn by a railroad section gasoline motor car along the main track of the Wabash Railway Company across Jefferson Street in the city of Kirksville, Missouri.

The suit wherein such judgment was rendered was instituted by the plaintiff's filing his petition in such court on December 29, 1936.

The defendant William N. Reeves, at the time being a minor under the age of twenty-one years, the Honorable Chas. E. Murrell, Jr., was by the court appointed guardian *ad litem* for him; and such guardian *ad litem* filed a separate answer for such defendant denying each and every allegation in the plaintiff's petition.

The defendant W. T. Reeves also filed separate answer denying each and every allegation in the plaintiff's petition.

Upon a trial had at the February Term, 1937, of the court, before the Honorable Noah W. Simpson, special judge of the court, and a jury, a verdict was returned, finding the issues for the plaintiff against both the defendants and assessing his damages at $1750, upon which verdict a judgment was in due time rendered in the plaintiff's favor against both the defendants in the said sum of $1750, from which judgment both the defendants, after unsuccessful motions for a new trial, have appealed to this court.

The evidence tends to show that the Wabash Railway Company operated and maintained a main line of railroad and side tracks upon either side, running north and south through the city of Kirksville, Missouri, which intersected with and crossed Jefferson Street, a public street in said city running east and west across the city, at a point a block or so south of its depot and carhouse in said city and that on the morning of December 11, 1936, the plaintiff was riding on a low, flat-topped trailer car being drawn along the main line of the railroad in said city by a railway section gasoline motor car, which trailer car as it passed over Jefferson Street was run into by the automobile of the defendant W. T. Reeves, at the time being driven by his son (the defendant William N. Reeves) east along Jefferson Street, with such force as to tear the trailer car loose from the motor car and hurl it from the track, severely injuring the plaintiff.

The evidence shows that the plaintiff was, at the time of his injury, in the employ of the receivers of said company, on his way to engage in his work of repairing and maintaining the roadbed and tracks of said company; that the trailer and motor car were at the time being operated by the plaintiff's foreman, one Powell, who was also an employee of the receivers; and that the trailer and motor car were supplied or furnished by the receivers for transporting the plaintiff and other employees from place to place along the railway to pursue their work.

The defendant W. T. Reeves, the owner of the automobile, was at the time of the accident school physician of Kirksville and had been such for a period of about eleven years. He used such automobile in the practice of his profession and in the prosecution of his business. The automobile was also used by other members of his family, including the defendant William N. Reeves, in the prosecution of their own affairs and for their own pleasure, when desired or needed.

The evidence discloses that the defendant William N. Reeves on the date of the accident was attending school at the State Teachers College and had been enrolled in that school for a considerable length of time prior to the date of the collision; that he was paying at least a part of his expenses, including his tuition, out of the money which he himself earned; that the automobile, while owned by the defendant W. T. Reeves, was a family car and was used as such by the various members of his family at pleasure; that it had been used by the son at all times that he needed to do so; that, on the morning of December 11, 1936 (that being the date of the accident), the son was using the car for the purpose of going to visit one Dr. Beatty, who lived in the Rollins Apartment in Kirksville, by whom he was employed to give certain attentions before going to school; that he left the house of his father about seven o'clock A. M., driving the automobile in question; that, on the date of the accident, the son was eighteen years of age and was residing with his parents and it had been his custom over a period of a year and a half to attend to the duties for which he was employed early in the morning and to drive to Dr. Beatty's in the automobile; and that, on some occasions, he would proceed from there to school and, on others, he would return home. The evidence does not show that William N. Reeves was engaged in any business or mission on behalf of his father at the time of the accident or that his father had anything to do with the employment of his son by Dr. Beatty or that his father was a party to the arrangement or contract therefor or interested therein in any way. Dr. Beatty paid the son for his services and such funds as the son derived on such account were kept and retained by him. The evidence fails to disclose any connection between the defendant W.

T. Reeves and Dr. Beatty as physician and patient or otherwise but shows to the contrary that there was none.

At the time of the collision between the defendants' automobile and the trailer upon which the plaintiff was riding, the plaintiff was traveling south, going to his work. He had boarded the trailer at the carhouse of the railway company, about a block from its depot north of Jefferson Street around seven o'clock the morning of that date. Other employees engaged in like work with the plaintiff were also riding on this trailer going to their work. When the driver of the gasoline motor car drawing the trailer reached Jefferson Street, he slowed up his car almost to a stop just before coming upon the street on account of the approach of an automobile from the east on Jefferson Street, which he allowed to cross the railroad track in front of his motor car and trailer and proceed to the west. There was testimony to the effect that this car, approaching from the east, had no lights turned on. As soon as the automobile from the east cleared the crossing, the driver of the gasoline motor car and trailer resumed movement upon and across Jefferson Street; and, when the trailer had reached the south edge of Jefferson Street and was ready to go off the street, the defendants' car appeared, coming from the west, and ran into it while it was yet on the south half of the street. There is evidence to the effect that the defendants' automobile was not lighted at the time that it approached and ran into the trailer and that it was traveling forty-five to fifty miles per hour. There is also evidence by the defendants to the contrary. There is evidence that the motor car and trailer were traveling at the rate of five to eight miles per hour when the accident occurred. There was no light upon either the motor car or the trailer. There was no electric signal given to call attention to the presence of the motor car and trailer upon the crossing. However, it appears from the plaintiff's testimony that one Gurney Baugh, who was riding on the trailer at the time, upon the discovery of the rapid approach of the defendants' automobile, stepped off of the trailer with a red flag in his hand and tried to flag the driver of the automobile. When he observed that the rate of speed of the car was not being reduced, he stepped back and hallooed, "Look out, boys!" There is no evidence to show that the defendant W. T. Reeves was in the automobile or was present at the time of the accident.

The defendant William N. Reeves testified that he had the lights on the automobile turned on from the time that he left his father's home and that they were on at the time of the accident. He testified further that he first saw the motor car and trailer when he was from ten to fifteen feet from them and that they were moving at that time; that, when he discovered them, he immediately put on his brakes and swerved his car to the left or to the north to try to miss them (he was

traveling on the south half of the street); that, just before he noticed the motor car and trailer, he met another automobile traveling west; that its lights were burning at the time and blinded him so that his vision of the trailer was obscured; that the motor car and trailer were on the main track; and that there was a switch track immediately west of that track. The record shows that there were two side or switch tracks on either side of the main track as it passed over the crossing. The defendant William N. Reeves testified that he did not see any lights on the trailer nor did he see the flagman. He testified that, when he reached the first track on the west, he was traveling at about twenty miles an hour or better; that he stopped feeding his car and decreased the speed; that he reduced the speed to about five or six miles per hour; that he met the automobile which blinded him between the main line on which the motor car and trailer were and the first track west; that it was about a distance of fifty or sixty feet between the main track and the switch track where he met the west-bound automobile; that the west-bound automobile had its lights on at that time; that, between the main line and the first track west, he passed the west-bound car; that there was a string of box cars on the switch track, the first west of the main track, the south car standing about five or six feet north of the edge of Jefferson Street. There is evidence on the part of the plaintiff tending to show that there were no box cars on that track at that place at that time. The defendant William N. Reeves testified that he could not get to the north part of Jefferson Street to pass in the rear of the trailer on account of this west-bound automobile which was in his way and that his vision of the trailer was obscured by the lights on the west-bound automobile, in that such lights blinded him. He testified that he had driven over this crossing prior to this time and was familiar with it; that it had been his practice to slacken the speed of his car before reaching the crossing to be sure that no train was coming and also because it was a rough crossing; that he saw no watchman and did not know whether there was one there or not; that, while he did not know, he expected that he could have stopped his car within five feet, going at the rate of five or six miles per hour; that, at the time of the accident, it was rather hazy and smoky and about half daylight and that the sun was not up and that the hazy and smoky condition also interferred with his vision.

There was evidence that, after the accident, the defendant William N. Reeves said, ''I will go down and get my father. He is a doctor;'' that he went and came back with his father about the time that the plaintiff was being started to the hospital; that the defendant W. T. Reeves said to W. E. Powell, the driver of the motor car and trailer, ''—get in my car. You can ride over with me;'' that Powell got in his automobile and rode over to the hos-

pital with him; and that it was the same automobile as that in the accident. Dr. Reeves testified that, when his son (the defendant William N. Reeves) returned home that morning, one light was burning on the automobile and the other light had been damaged.

The petition charges general negligence and charges that the defendants so carelessly and negligently operated their automobile and so carelessly and negligently drove the same with force and violence into the side of the trailer upon which the plaintiff was riding that the trailer was wrecked and derailed and forced across the right of way of the railroad and that, by reason of the said striking, the plaintiff was thrown upon and about on the trailer and was greatly injured, which injuries proved to be permanent, from which he was made sick and sore and from which he will continue to suffer great pain of body and mind.

At the close of the whole evidence, each defendant requested an instruction in the nature of a demurrer requesting a directed verdict in his favor, which instructions were refused.

### OPINION.

The defendants (appellants herein) assign error as follows:

"1. The court erred in refusing to give to the jury defendant's (appellant's) instruction No. A, which instruction was tendered by the defendant (appellant), W. T. Reeves, at the close of all of the evidence in the case, and which was in the nature of a peremptory instruction directing the jury to find for the defendant, W. T. Reeves.

"2. The court erred as to both defendants in giving to the jury, at the request of the plaintiff, plaintiff's (respondent's) instruction No. 1.

"3. The court erred as to defendant, W. T. Reeves, in giving to the jury plaintiff's (respondent's) instruction No. 2.

"4. The court erred in giving to the jury plaintiff's (respondent's) instruction No. 3.

"5. The court erred in overruling defendant's (appellant's) motion for a new trial."

1. The first point made by the defendants is that the trial court should have given the instruction asked by the defendant W. T. Reeves at the close of all of the evidence, directing a verdict in his favor. This point is based upon the claim that, under all the evidence, there was no showing that, at the time of the accident complained of by the plaintiff, the driver of the automobile which collided with the trailer upon which the plaintiff was riding and which at the time belonged to the defendant W. T. Reeves was in the employ of the defendant W. T. Reeves or that he was driving the automobile as his servant or agent or upon any business for him.

It is contended by the defendant W. T. Reeves that proof of the

mere fact that he was the owner of the automobile at such time and that the defendant William N. Reeves was driving the same with his permission or consent was not sufficient to show that he was driving the same upon any business for him or that he was driving the same as his agent or servant, so as to make him liable to the plaintiff in damages for injuries resulting from any careless or negligent driving of the same by William N. Reeves, especially in the face of the positive and uncontradicted evidence in the record disclosing that at such time the automobile was being operated by the driver thereof for his own purpose and upon his own business, wholly disconnected from any interest of his.

In support of such point, the following authorities are cited: Curtis v. Harrison (Mo. App.), 253 S. W. 474; Kilcoyne v. Metz (Mo. App.), 258 S. W. 4; Bright v. Thatcher, 202 Mo. App. 301, 215 S. W. 788; Kibbe v. Lamar, 227 Mo. App. 620, 54 S. W. (2d) 427; Hays v. Hogan, 237 Mo. 1, 200 S. W. 286; State ex rel. Kurz v. Bland, 333 Mo. 941, 64 S. W. (2d) 638; Murphy v. Loeffler, 327 Mo. 1244, 39 S. W. (2d) 550.

2. The plaintiff (the respondent herein) contends to the contrary. He argues that the automobile was shown to be the automobile of the defendant W. T. Reeves and that his son (the defendant William N. Reeves) was driving it with his permission and that this made a *prima facie* case of agency, upon which he was entitled to go to the jury notwithstanding the positive and uncontradicted evidence in the record that, at such time, the driver was not operating said car as the agent of the defendant W. T. Reeves or upon any mission or business for him but was operating the same wholly upon his own business. The plaintiff cites in support of such contention Edwards v. Rubin, 221 Mo. App. 246, 2 S. W. (2d) 205; McCarter v. Burger (Mo. App.), 6 S. W. (2d) 979. He contends that, because the evidence which showed that the driver of the car was not on any mission for and was not an agent of the owner of the automobile but was operating the same wholly for his own business was shown by the evidence of the defendants, the jury was not compelled to accept the same and that he was still entitled to go to the jury upon the showing that the automobile was at the time of the accident owned by the defendant W. T. Reeves and that the driver thereof, his son, was operating the same with his permission.

The case of Edwards v. Rubin, *supra,* is not in point. While there was direct and positive evidence in that case that the defendant owned the automobile which caused the accident and that the driver thereof was at the time driving the same, there is no evidence in the record, by either the plaintiff or the defendant, on the question of the authority or lack thereof of the driver to drive the same or of whether at the time of the accident he was driving the same upon

his own business or upon business for the owner. In that case, the court said that there was substantial evidence tending to show that the defendant was the owner of the automobile which inflicted damage, *prima facie* sufficient to charge him with responsibility for its management, and that the truth of any rebutting evidence was for the trier of the facts. However, in that case, there was no rebutting evidence.

The case of McCarter v. Burger, *supra*, also relied on by the plaintiff, followed the case of Edwards v. Rubin and held that proof of ownership alone was *prima facie* sufficient to charge the owner with responsibility for the management of the automobile and that the truth of any rebutting evidence purporting to disprove the inference of agency thus created was for the jury. The rebutting evidence in that case was to the effect that the owner of the car had given no express permission to the driver to drive the same and that he was not even aware that it was being used by the driver at the time of the accident. However, the Supreme Court in the case of Murphy v. Loeffler, *supra*, withheld its approval of the doctrine announced in McCarter v. Burger, so far as it related to family pleasure automobiles (which the one in question was), to the effect that ownership is sufficient to charge the owner with responsibility for the management of the automobile by a member of the family and that the truth of the evidence purporting to disprove the inference of agency created is for the jury and held, upon the facts and issues therein, that the general rule of the common law is that the father of a minor child cannot on the mere ground of parental relationship be held liable for the injury caused by the tortious act of the child. It further held that such rule may be avoided by proof that, at the time when the injury was inflicted, the child was employed by the father in the capacity of servant or agent, either generally or with respect to the particular piece of work then in progress and that the act from which the injury resulted was done in the course of that employment.

In the case now before us, the automobile in question, while owned by the defendant W. T. Reeves, was not only used by him in his business but was used as a family car, each member of the family being given permission to use it upon his own business and being accustomed so to use it. The defendant William N. Reeves, as a member of the family, had permission to use it and had been using it for a year and more in the prosecution of the same business that he was using it for on the occasion of the accident. There is no evidence to the contrary. There is none to show that, at the time of the accident, he was in the employ of his father in the capacity of a servant or agent, either generally or with respect to the business which he was pursuing; but, upon the other hand, there is uncontradicted

evidence showing that he was engaged, at the time, for himself alone and in the pursuit of his own business.

In the case of a family car which is used by the members of a family at pleasure, the parent or head of the family or owner cannot be held for damages inflicted by some member of his family while driving the car in the absence of evidence tending to show that, at the time of the accident and the injury inflicted thereby, such member was driving the car as his agent or was on business for him. Proof of the mere fact of ownership and permission to the driver of the car to drive the same is not sufficient. [Hays v. Hogan, *supra*.]

What was said in the Murphy-Loeffler Case with reference to the McCarter-Burger Case not only eliminates the McCarter-Burger Case as an authority for the plaintiff's contention; but it also eliminates the Edwards-Rubin Case, *supra*, if such case had been otherwise in point.

The Murphy-Loeffler Case fully supports the contentions of the defendants.

3. The authorities cited by the defendants, *supra*, in support of their point and contention, to which may be added the case of Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854, and others, support such point and contention.

In Hays v. Hogan, *supra*, the Supreme Court of this State held that the mere ownership of an automobile purchased by a father for the use and pleasure of himself and his family does not render him liable in damages to a third person for injuries sustained thereby through the negligence of his minor son while operating the same on a public highway in furtherance of his own business and pleasure and the fact that he had the father's permission or general consent to use the car is immaterial. The doctrine of this case is still the law of this State. It was reasserted by the Supreme Court in the case of Murphy v. Loeffler, *supra*, and again in State ex rel. Kurz v. Bland, *supra*. Following this case, the St. Louis Court of Appeals, in the cases of Bright v. Thatcher, *supra*; Buskie v. Januchowsky (Mo. App.), 218 S. W. 696; Curtis v. Harrison, *supra*; Kilcoyne v. Metz, *supra*; and the very recent case of Leibman v. Fix (Mo. App.), 108 S. W. (2d) 639, upon an analogous state of facts in each case, asserted the same doctrine.

Kibble v. Lamar, *supra*, decided by this court, was a suit against a father and his son for damages for personal injuries caused by an automobile owned by the father and being driven by the son coming into collision with a bicycle on which the plaintiff was riding. In this case, the evidence was sufficient to warrant a finding that the son was operating the automobile with the permission of his father and that the father was the owner of the automobile and that the son lived in his father's home and usually had permission to use the au-

tomobile but that he did not have such permission at the time of the accident. The evidence failed to disclose that the son was at the time of the accident operating the automobile upon any mission or business for his father or as his father's agent but did disclose to the contrary that he was not at such time operating it on the business or in the interest of the father. This evidence was undisputed. The only evidence in the case which it could be claimed connected the father with the accident was that he owned the automobile and had given his son permission to use it. It was held by this court under such facts to be the settled law of this State that the father could not be held liable for the negligent act of his son in .operating the automobile (citing Buskie v. Januchowsky, *supra*) and that a requested instruction by the father for a directed verdict in his behalf, which the court refused, should have been given. It was further observed that the doctrine of the Buskie Case has been the law of this State since the decision of the case of Guthrie v. Holmes, *supra*.

4. The plaintiff contends, however, that, having in his case in chief shown that the ownership of the automobile in question was in the defendant W. T. Reeves and that the defendant William N. Reeves was at the time of the accident operating it with his permission, he made a *prima facie* case and raised an issue for the jury, regardless of any showing that the defendants might afterward have made; that neither he nor the jury was bound by the defendants' rebutting evidence; that the jury was not required to believe such offered by the defendants; and that it was for the jury to say whether it did so believe the same or not, and if not believed by it, the issue was before it on the plaintiff's *prima facie* showing alone. Of course, if the plaintiff made a *prima facie* case by the proof of such facts entitling him to go to the jury, it was by reason of an inference or presumption arising from such facts to the effect that the son (the defendant William N. Reeves) was at the time of the accident driving the car as his father's agent or upon business for his father and was driving it within the scope of his agency.

The same contention was made in the case of Guthrie v. Holmes, *supra*, and was ruled adversely to the contention made by the plaintiff. It was held in that case that neither one nor both of the facts, that the defendant was the owner of the car and that the driver was using it by his permission, were sufficient to show that the driver was engaged in the owner's business. In that case, the presumption contended for is characterized as a "frail thing;" and it is said therein that such presumption is unlike an inference arising upon the proof of certain facts, which is necessarily true if the facts are true, and that presumptions of such character take flight upon evidence of the real facts. It quotes approvingly (l. c. 233 and 234 of 272 Mo. 215) from Berry on Law of Automobiles (2 Ed.), section 615, page 694, as follows:

"This presumption cannot stand in the face of positive proof of facts to the contrary; and where the plaintiff has relied upon such presumption and it has been opposed by positive evidence to the contrary, he must then produce evidence tending to disprove the defendant's positive testimony, or his *prima facie* case will fall. . . . It rests upon the fact that the automobile was owned by the defendant and that the chauffeur who was operating it was in the general employment of the defendant; neither one or both of which actually tends to prove that the chauffeur was engaged in the owner's business."

5. That the evidence introduced tending to disprove the *prima facie* case made by the plaintiff was introduced by the defendants rather than the plaintiff is immaterial. In Hurck v. Missouri Pac. Railroad Co., 252 Mo. 39, l. c. 48, 158 S. W. 581, it is said: "The above stated exception to the general rule is, it will be seen, wholesome doctrine, for if either by plaintiff's own evidence or by the evidence offered by defendant it appears that the unusual happening (which by its very nature raises the presumption of negligence) was caused wholly by *vis major*, or by any other instrumentality disconnected from any negligence of defendant, the presumption is undetermined and falls and no case is made, and in that situation the plaintiff must fail unless he goes forward with evidence showing specific negligence." In that case, the plaintiff was relying upon presumptive negligence. A train had been derailed and a plaintiff injured. The defense was that the derailment was occasioned by an act of God. In Sowders v. St. Louis & S. F. Railroad Co., 127 Mo. App. 119, l. c. 124 and 125, 104 S. W. 1122, of the rule as to the presumption of the character here involved, it is said: "All presumptions of fact proceed from other facts in proof (Lawson on Presumptive Evidence, 652), and supply an omitted fact in accord with the dictates of human experience on like questions. They are therefore rebuttable or disputable as a matter of course. Inasmuch as such presumptions merely amount to an assumption of what may be true, as indicated by the probabilities and the rationale of experience, they may be entirely overcome or removed from the case by competent proof going to supply the fact presumed. [Lawson on Presumptive Evidence, 559; 22 Am. and Eng. Ency. Law (2 Ed.), 1235-1236; Moreau v. Branham, 27 Mo. 351; Ham v. Barrett, 28 Mo. 388.] And it is the well-established law that a presumption of fact will not be permitted to contradict or overcome facts actually proved. [Lawson on Presumptive Evidence, 659; Whitaker v. Morrison, 44 Amer. Dec. 627; Morton v. Heidorn, 135 Mo. 608-617.]"

In the case now under review, the plaintiff failed to go forward and introduce any evidence contradicting that of the defendants.

6. Moreover, such a presumption does not arise upon a situation

created by the facts in this case. The facts in this case are analogous to those in Hays v. Hogan, *supra*. In that case it was said (273 Mo. 1, l. c. 24 and 25):

"It is next insisted by the counsel for plaintiff that the ownership of the car by the father and that it was being driven by his son at the time of the injury with the former's consent, raises a presumption that the latter was acting within the scope of his authority, and therefore, the burden of proof rests upon the father to show the contrary.

"The vice of this insistence consists in assuming that the ownership of the car by the father and his consent of its use by the son, constituted the latter his agent and servant, and therefore at the time of the injury the car of R. S. Hogan was being driven by his servant J. E. Hogan.

"That is *non sequitur*. That sequence would no more follow in this case than it would in a case where, if a member of this court should lend his car to a friend to drive to Fulton and while *en route* he should negligently run over and injure a third person. In both cases the agency would have to be first established and then, and not until then, would the presumption arise that the son or friend was acting within the scope of his authority, and thereby shift the burden of proof upon the father. [Guthrie v. Holmes, *supra*.]

"Moreover, if the insistence of counsel for plaintiff is correct, then the court would be required to enforce one presumption upon another, namely: First, that the son was the agent of the father, and, second, that the agent was acting within the scope of his authority. This is never done. A presumption must be based upon a fact, and not upon inference or upon another presumption."

The ruling in the Hays Case is approved in State ex rel. Kurz v. Bland, *supra*, as follows (333 Mo. 941, l. c. 946): "That case"— referring to Hays v. Hogan—"dealt with a situation where an automobile, owned by a father and being, with his consent, driven by his son, met with a casualty, due to the son's negligent driving, which resulted in an injury to the plaintiff. The action brought thereon for damages was against the father who was sought to be held liable on the doctrine of *respondeat superior*. We held that the facts just stated raised no presumption that the son was acting within the scope of his authority or that he was acting as his father's agent or servant, and that to hold to the contrary would be to base one presumption upon another, namely, that the son was such agent and was acting within the scope of his authority."

In the case of Murphy v. Loeffler, *supra*, the Supreme Court, on facts analogous to those in Hays v. Hogan, *supra*, denied the application of the presumption.

The scope or effect of presumption as laid down in the Guthrie-

Holmes Case has never since been authoritatively broadened or extended by the Supreme Court *en banc,* and it is the Supreme Court's last controlling decision on that subject. [State ex rel. Kurz v. Bland, *supra.*]

The case of Barz v. Fleischmann Yeast Co., 308 Mo. 288, 271 S. W. 361 (which might upon its face be relied upon as asserting a contrary doctrine to that in the cases of Guthrie v. Holmes and Hays v. Hogan) was held, in the cases of State ex rel. Vesper-Buick Automobile Co. v. Daues, 323 Mo. 388, 19 S. W. (2d) 700, and State ex rel. Kurz v. Bland, *supra,* not to be controlling as a ruling or pronouncement of any rule or principle of law by the Supreme Court in that the opinion therein did not have the concurrence of a majority of the judges of the court, only three of them concurring in the opinion while an equal number dissented thereto and one of the judges concurred only in the result of the decision in that case, so that while there was a decision reached on the facts of the case there was no authoritative opinion or pronouncement of law made by a majority of the members thereof.

The Barz Case is further distinguished upon the facts. In that case, the vehicle involved was a motor delivery truck with the name of the defendant appearing thereon. While it may have announced a different doctrine from that announced in the Guthrie-Holmes Case, yet such pronouncement was not authoritative and did not have the effect of overthrowing the doctrine announced in the Guthrie-Holmes Case. Neither did it have the effect of establishing any different rule from that announced and asserted in the case of Hays v. Hogan, *supra,* and the cases which follow it.

It follows that the plaintiff in the instant case was not entitled to have his alleged *prima facie* case submitted to the jury and that the trial court erred in refusing the requested instruction by the defendant W. T. Reeves directing a verdict in his favor.

7. The second point made by the defendants on this appeal is that the trial court erred in giving the plaintiff's instruction No. 1 in that it submitted general negligence only when the proof shows specific negligence; that it required no finding of any affirmative fact essential to the verdict for the plaintiff and did not require a finding upon the particular negligent acts disclosed by the evidence and gave to the jury a roving commission and that it did not hypothesize any facts in evidence necessary to be found by the jury to authorize a recovery.

It is clear that the petition charged general negligence of such a character as permitted the application of the doctrine or rule of *res ipsa loquitur* if such rule became available upon the facts. It is true that there is some evidence upon the trial to the effect that, at the time of the accident, the defendant William N. Reeves was driv-

ing the car at a rate of speed of forty to fifty miles per hour and also evidence to the effect that there were no lights on the car. Such facts may be treated, however, as elicited merely as a part of the circumstances attending and surrounding the accident and the plaintiff's injury, upon which circumstances as a whole, together with the character of the accident, the jury was to base any inference of negligence arising upon the defendants' part in accounting for the accident and injury. The accident occurred early in the morning, before the sun was up. There is a confusion in the evidence as to the state of visibility at the time. However, it fairly appears from all of the evidence that it was sufficiently light for an object to be readily seen. The case seems to have been tried by all parties upon the *res ipsa loquitur* theory. There was no objection made by the defendants to the evidence, when offered, as to the rate of speed at which the defendants' car was travelling at the time of the accident or to the evidence tending to show whether or not his car had lights on it. There was no motion by the defendants to require the petition to be made more definite and certain. If there was error in the plaintiff's Instruction No. 1, the defendants joined in such error by Instruction No. 1 given in their behalf and upon their request, which is as follows: "The court instructs the jury that the charge of negligence made by the plaintiff against the defendants in this action must be proved to the satisfaction of the jury by the preponderance of the evidence. The jury have no right to presume negligence and if the evidence does not preponderate in favor of plaintiff, then your verdict should be for the defendants." The negligence referred to in this instruction was the negligence charged in the plaintiff's petition, which was general negligence. The defendants requested no instruction submitting any specific act of negligence, in evidence, but submitted the case wholly on the general negligence charged in the petition, as did the plaintiff's instruction. Having done so, they cannot complain of the plaintiff's instruction No. 1, even though erroneous. [Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709; Lange v. Missouri P. R. Co., 208 Mo. 458, 106 S. W. 660; Vogelsang v. Board of Education of City of Cape Girardeau (Mo. App.), 231 S. W. 645; Spencer v. Quincy O. & K. C. Railroad Co., 317 Mo. 492, 297 S. W. 353; Mead v. South Side Bank (Mo. App.), 14 S. W. (2d) 664; Amos v. Fleming, 221 Mo. App. 559, 285 S. W. 134; Shoemaker v. Adair County Coal Co. (Mo. App.), 255 S. W. 350.]

8. The third point made by the defendants is that the trial court erred as to the defendant W. T. Reeves in giving to the jury the plaintiff's Instruction No. 2 which, in effect, told the jury that, if it found for the plaintiff and against the defendant William N. Reeves and further found that the automobile was owned by the defendant W. T. Reeves and was being operated by the defendant William N.

Reeves as agent and servant of W. T. Reeves, then the verdict should be for the plaintiff and against both defendants.

The instruction as to the defendant W. T. Reeves was clearly erroneous. What has been said in this opinion in disposing of the first point made, relating to the refusal of the peremptory instruction at the close of all of the evidence in the case directing a verdict for the defendant W. T. Reeves, disposes of this point in his favor. It is unnecessary to set out again what is there said. There is no evidence from which the jury could find that the defendant William N. Reeves was acting as agent or servant of the defendant W. T. Reeves at the time of the accident.

9. The fourth point made by the defendants is that the court committed error in giving the plaintiff's Instruction No. 3. This instruction was clearly erroneous as to the defendant W. T. Reeves. It charged the jury, in effect, that, if the jury found that the defendant William N. Reeves was negligent in the operation of his automobile, which negligence contributed to the injury of the plaintiff, then the jury might find for the plaintiff, even though the operator of the motor car on which the plaintiff was riding was also negligent. The instruction was erroneous. Under it, if William N. Reeves was found negligent, then the jury might not only find for the plaintiff against him but also against the defendant W. T. Reeves. There was no basis in the record for any verdict or judgment against the defendant W. T. Reeves.

10. The fifth point made by the defendants is that the court erred as to each of them in overruling their motions for a new trial. This point seems, however, not to have been carried forward in the brief or insisted upon. It may be treated as waived. If not waived, it is, nevertheless, too general to present anything for review.

We find no prejudicial error in the record as to the defendant William N. Reeves. The judgment is reversed as to the defendant W. T. Reeves and affirmed as to the defendant William N. Reeves. All concur.