STATE OF MISSOURI at the Relation of H. J. MASSMAN, Relator, v. EWING C. BLAND, NICK T. CAVE, and SAMUEL A. DEW, Judges of the Kansas City Court of Appeals, and LOWELL V. CRULL.—No. 39758.—194 S. W. (2d) 42.

Court en Banc, April 8, 1946.

Rehearing Denied, April 30, 1946.

*Garrett & Ruark, Spurgeon L. Smithson* and *Walter A. Raymond* for relator.

18

*John B. Moritz, Cowgill & Popham* and *Sam Mandell* for respondents.

CLARK, C. J.—In the circuit court, Lowell V. Crull obtained a verdict and judgment against H. J. Massman for damages for personal injuries. On defendant's appeal the judgment was affirmed by the Kansas City Court of Appeals. [189 S. W. (2d) 1009.] By certiorari we have brought the case here for review on the merits under the provisions of Article V of the Missouri Constitution of 1945.

The briefs are mainly devoted to the question of the sufficiency of plaintiff's evidence to make a submissible case and, in our view, that is the only question necessary for us to consider. In considering that question we are required to view the evidence in a light most favorable to plaintiff's theory.

At all times material here defendant Massman was president and chief owner of the stock of Massman Construction Company, a corporation. He was also the owner of a farm in Jackson County, Missouri, upon which one G. R. Kelly resided. On this farm was a large building used by the construction company for the storage of machinery and the company employed Kelly to look after the machinery and assist in moving it in and out of the building when required. Kelly operated the farm under a verbal agreement with Massman whereby the latter furnished the seed, farming tools and live stock and both were to share in the profits, if any. However, no profits were realized and the deficit each year was borne by Massman. Kelly leased a nearby farm from one Embry [which we will call the Embry farm] upon which he permitted his sister and her family to live.

Plaintiff Crull was injured while helping to operate a sorghum mill on the Embry farm, for which work he was employed by Kelly. Plaintiff's theory is that, in employing him, Kelly acted as Massman's agent.

At the start of the trial plaintiff's counsel, as admissions against interest, read excerpts from a deposition previously given by Massman and defendant's counsel read further portions of the same deposition. In substance these were: that Kelly was employed by the construction company to look after its machinery and operated the farm under an agreement with Massman; that this was supposed

to take all his time and he was not to work for anyone else or engage in other business; that some, of the farm produce was stored in a silo on the farm and fed to Massman's cattle; Kelly sold some of the produce and accounted for the proceeds; at one time potatoes raised there were taken to one of the construction camps; that when extra employees were needed Kelly would hire them, first getting permission from Massman, his son or Mathonet; [an officer of the corporation] that Kelly would direct the work of such employees; that witness did not know that any cane was raised on his farm; that no sorghum was made on the place; that he knew nothing about it being made until later.

Crull, the plaintiff, testified: that Kelly employed him and he worked on the Massman farm about three weeks off and on before he was injured at the sorghum mill; that Kelly would direct him to work at the mill part of the time and on the farm part of the time; that there were about six acres of cane growing on the Massman farm a short distance from the house and in plain view from it; that some of this cane was taken to the mill on the Embry farm and used in making sorghum, a team from the Massman farm being used to haul it; that some molasses was put in cans and taken to the Massman farm and he saw a truck with "Massman Construction Company" on it take some of it away from the barn on that place; that when his pay was ■ due Kelly would go some place and come back with the money; that the sorghum mill, on the Kelly farm, could not be seen from the road and witness did not know it was there until he went there to work; that then, for the first time, he learned that his father was interested in the mill; that about half of the cane on the Massman farm went into the silo and the rest was run through the sorghum mill; that at one time Kelly said: "Well I have always got mine working for Massman. I am going over today to get it and you will get it tomorrow. We are both working for the same man."

George Guttridge testified that he was hired by Kelly and cut cane on the Massman farm; that Kelly said: "Well I am working here just the same as you are, I will have to go to see Massman to get the money;" that he saw a truck with "Massman Construction Company" on it take filled cans from the farm.

S. O. Smith testified: that he had been making molasses about twenty years; that he went to see Kelly about setting up a sorghum mill; that Kelly said he "would have to see Mr. Massman about this contract; he was working for Mr. Massman and he would have to have his signature and that he did not know whether it woud go through or not;" that Kelly went away and came back with a contract with Massman's name on it; that witness signed and kept a copy of the contract, but does not know what became of it; that Kelly showed him a motor on the Massman farm which was unsuitable and

Kelly said he would have to go down to the construction camp and get a motor; that later Kelly came back with a motor which they used to run the sorghum mill; that he saw a truck with "Massman Construction Company" on it take away some of the filled sorghum cans, from where is not clear; that one or more other farmers brought cane to the sorghum mill.

W. L. Crull, father of the plaintiff, testified that he and Smith signed the contract for the operation of the sorghum mill, after Kelly brought it to them already signed by him; that Smith kept a copy, but witness did not.

Without objection defendant introduced a copy of the contract; it purports to be between Smith and W. L. Crull as first parties and Kelly as second party and is signed by each of them; it does not refer to Massman and his name does not appear upon it.

The declarations purported to have been made by Kelly were received in evidence over defendant's objection. Kelly testified for defendant and denied that he made such declarations; denied that he told Massman about the sorghum mill contract or about the lease of the farm for his sister until after plaintiff was injured; that Massman had nothing to do with the sorghum deal and got none of the molasses except he may have given him a half gallon or gallon; that Kelly hired plaintiff to work at the sorghum mill and didn't remember that he worked at the Massman farm after he began work at the mill; that before that plaintiff had worked on the Massman farm; that Kelly paid the workmen if he had the money; if he did not have it he got it from Massman and accounted to him later; that he sometimes bought merchandise, including cans, on the construction company account to get the discount and later accounted for such purchases; that no cans were delivered or taken away by trucks of the construction company; that some cane from the Massman farm was used at the sorghum mill, but an equivalent amount of cane from the Embry farm was later placed in the Massman silo; that the motor used at the sorghum mill was rented by him from a man named Wentry.

Massman testified substantially as in the portions of his deposition heretofore mentioned; also that he had nothing to do with the sorghum deal and didn't know about it or about Kelly's lease of another farm until after plaintiff was injured. He said Kelly had permission to buy merchandise on the construction company's account.

The general rule is well settled that neither the fact nor scope of agency can be established by the mere out of court declarations of the alleged agent. [Kurz v. Greenlease Motor Co. (Mo. App.), 52 S. W. (2d) 498; State ex rel. Kurz v. Bland, 333 Mo. 941, 64 S. W. (2d) 638; Mechanics' American Bank v. Rowell (Mo.), 182 S. W. 989; C. I. T. Corporation v. Hume (Mo. App.), 48 S. W. (2d) 154.]

Respondent does not controvert the general rule as we have stated it, but says that respondent offered other substantial evidence of agency and the declarations of Kelly were admissible as corroborative and cumulative evidence and as part of the res gestae. On this respondent cites, among others, the following cases: Koewing v. Greene County B. L. Assn., 327 Mo. 680, 38 S. W. (2d) 40; J. A. Fay & Egan Co. v. Brown Machinery Co. (Mo. App.), 14 S. W. (2d) 491; Farm & Home S. & L. Assn. v. Stubbs, 231 Mo. App. 87, 98 S. W. (2d) 320; Meux v. Haller, 179 Mo. App. 466, 162 S. W. 688; Adams v. Carlo (Mo. App.), 84 S. W. (2d) 682. Each of those cases was, as this one must be, decided upon its own particular facts. We accept the general statements of law contained in the cases cited, to wit: that the existence and scope of agency need not be established by direct and positive evidence but may be inferred from facts and circumstances in evidence; also, as quoted in respondent's brief:

"That where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform on behalf of his principal a particular act, such particular act having been performed, the principal is estopped, as against such innocent third person, from denying the agent's authority to perform it." [Koewing v. Greene County etc., supra.]

Again, still quoting from respondent's brief:

"It appears to accord with the definition of apparent authority commonly given in the textbooks; that it is such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would náturally suppose the agent to possess. . . . The question is rather what third persons had the right to believe concerning the agent's powers, than what powers the principal intended to confer." [Fay & Egan v. Brown, supra.]

██ For independent proof of agency, respondent relies on what he terms admissions contained in Massman's deposition. If Massman made damaging admissions in his deposition he repeated them in his testimony at the trial. Let us see what admissions Massman made which would induce respondent as "a person of ordinary prudence, conversant with business usages and the nature of the particular business" and "as a reasonably prudent man, using diligence and discretion," to presume that Kelly had authority to engage in the operation of a sorghum mill as the agent of Massman. Massman admitted, or stated, that Kelly was employed to care for the machinery of the construction company on the Massman farm; also to operate the Massman farm, sell produce therefrom and, first obtaining permission, to employ and supervise extra help needed on the Massman farm. All these admissions, or statements, relate to the operation of the Massman farm and we see nothing in them to induce respondent

to believe that Massman had clothed Kelly with authority to become a partner in the operation of a sorghum mill on another farm. There is nothing in the record to show that Kelly had ever before engaged in such an enterprise or in any work of any kind on the farm where the sorghum mill was located. Respondent's brief contains a statement to the effect that he was justified in assuming that the Embry farm was under lease to Massman. There is no foundation in Massman's testimony or elsewhere in the record for that statement. Kelly did not occupy the Embry farm and there is nothing to show that either Massman or Kelly had ever had anything to do with its operation. Respondent's previous employment had always been on the Massman farm. Also, respondent knew that the sorghum mill was not being operated solely by Kelly. He admits that he knew that Smith and W. L. Crull, respondent's father, were interested in its operation. True, the mere fact that the mill was not located on Massman's farm did not conclusively disprove his interest in it, but the fact that Kelly, either alone or with others, engaged in a business distinct from Massman's and away from Massman's premises did not indicate that Massman was interested in it. [2 C. J. S. 1242—3.]

As we understand it the doctrine of *res gestae* is an exception to the hearsay rule and permits proof of acts or declarations growing out of, contemporaneous with and illustrative of, the main fact. Here the main facts are the conditions which existed and the relationship of the parties at the time of respondent's injury at the sorghum mill. The testimony of Guttridge that at some indefinite time Kelly told him "I am working here the same as you are," etc., if true, referred to work on the Massman farm and did not refer to respondent. A similar declaration testified to by respondent was likewise indefinite as to time and place and as to the work discussed. Such declarations do not constitute a part of the *res gestae*. [Gaines v. Berkshire Life Ins. Co., 228 Mo. App. 319, 68 S. W. (2d) 905, 908; Brandtjen & Kluge v. Hunter, 235 Mo. App. 909, 145 S. W. (2d) 1009, 1017; State ex rel. Kurz v. Bland, 333 Mo. 941, 64 S. W. (2d) 638, 642.]

Smith and W. L. Crull, respondent's father, testified that when the sorghum mill contract was being negotiated, Kelly said he would have to get Massman's consent and later returned with Massman's name on the contract. The only contract introduced in evidence was produced by appellant and Massman's name was not on it. It contains the admitted signatures of Smith, W. L. Crull, [respondent's father] and Kelly, purports to be an agreement between them and definitely shows that Massman was not a party to it. There was no proof that Massman placed his name on the copy retained by Smith or authorized anyone else to do so, nor whether his name was placed there by handwriting, typewriting or rubber stamp. The wording of the contract shows that Massman was not a party and, even if his name was on it by his authority, it would indicate only that he con-

sented for Kelly to become a party on his own account and not as Massman's agent. Further, the testimony of these two witnesses disprove the claim that Kelly had implied authority from Massman to engage in the sorghum business, and implied agency is the main theme of respondent's brief.

There was testimony that cane from the Massman farm was processed at the sorghum mill; so was cane from the Embry farm and one or more other farms, but that does not indicate that the occupants of any of these farms was interested in the sorghum mill.

There was testimony that boards from the Massman farm were used to make a platform at the sorghum mill and that a truck from that farm was used in connection with the mill. No proof was offered that Massman had actual knowledge of this nor were the acts so notorious as to imply such knowledge. Such acts of the alleged agent are on a par with his purported declarations and are inadmissible without independent proof of agency. [Stevens Davis Co. v. Sid's Petroleum Corp. (Mo. App.), 157 S. W. (2d) 246, 249; Sowers v. Howard, 346 Mo. 10, 139 S. W. (2d) 897, 902.]

There was testimony that a truck with "Massman Construction Company" on it, driven by an unknown driver, hauled sorghum from the Massman farm. There is a line of decisions holding that where a truck or automobile, with the name of a purported owner upon it and driven by a person in the general employ of such purported owner, inflicts injury or damage an inference or presumption arises that the machine belongs to the person whose name so appears and that the driver is acting within the scope of his employment. Those cases further hold that such inference or presumption disappears upon substantial proof to the contrary. Respondent says he does not rely upon the decisions mentioned nor upon a presumption. He claims he introduced independent proof of agency and its scope. That claim rests upon the so-called admissions of Massman which we have already discussed. If the legend, "Massman Construction Company," on the truck has any relevancy it must be because it creates an inference that Massman had something to do with *making* the molasses. The truck was not involved in respondent's injury and was not clearly shown to have ever been near the scene of the injury. There is no independent proof that the construction company, the driver of the truck or Massman knew how, where or by whom the molasses was made. The inference, if any, is drawn to such a tenuous line that it becomes invisible.

Respondent argues that Kelly transferred him from the Massman farm to the sorghum mill without notifying him of a change in employers and he was therefore justified in believing that he was still working for Massman. We do not agree. Neither Kelly nor Massman had ever engaged in the sorghum business. That was not an incident to the operation of the Massman farm nor a business in

which farmers generally engage. True it was concerned with processing farm produce, but so are flour mills, packing houses and many other enterprises. Respondent knew that the sorghum mill was not confined to processing cane from the Massman farm. He knew that two of the partners, his father and Smith, had no connection with the Massman farm or any other farm. Kelly's authority to employ help on the Massman farm would include cutting the cane and taking it to the mill, but under the facts of this case, would not justify an employee to believe that Kelly had authority to bind Massman to engage in the operation of the mill as a distinct and public business. [Bennett v. Royal Union Ins. Co., 232 Mo. App. 1027, 112 S. W. (2d) 143.]

■ We have searched this record and have examined the cases cited in the briefs and conclude that there is no proof, independent of the alleged acts and declarations of Kelly, which tend to show that Massman ■ expressly or impliedly authorized respondent's employment at the time and place of injury.

Accordingly, the opinion of the Court of Appeals is quashed and the judgment of the circuit court is reversed. All concur.